[No. B220136. Second Dist., Div. Two. Mar. 8, 2011.]

CITY OF ALHAMBRA, Plaintiff and Respondent, v.
ROBERT D'AUSILIO, Defendant and Appellant.

## Counsel

The Petersen Law Firm, Gregory G. Petersen and Ramon Trujillo for Defendant and Appellant.

Burke, Williams & Sorensen, Joseph M. Montes, Timothy L. Davis and Traci I. Park for Plaintiff and Respondent.

## Opinion

**DOI TODD, Acting P. J.**—Appellant Robert D'Ausilio sued respondent City of Alhambra (City) for civil rights violations and then settled the case with the City. The City then sued appellant for breach of the settlement agreement and declaratory relief. Appellant moved to strike the declaratory relief claim under Code of Civil Procedure section 425.16, the "anti-SLAPP" statute.[1]

---

[1] SLAPP is an acronym for strategic lawsuit against public participation. An order granting or denying a special motion to strike under Code of Civil Procedure section 425.16 is directly appealable. (Code Civ. Proc., §§ 425.16, subd. (i), 904.1, subd. (a)(13).)

Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

The trial court denied the motion and awarded the City its attorney fees. We agree that appellant failed to demonstrate that the declaratory relief claim arose from activity protected under the statute. We therefore affirm the order denying the motion. We also grant the City's request for attorney fees on appeal, the amount of which is to be determined by the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant is a former employee of the City, and served for many years as president of the Alhambra Firefighter's Association (AFA). In December 2006, he sued the City for alleged civil rights violations in connection with the City's investigation and discipline of his workplace conduct. In October 2007, appellant and the City entered into a "Settlement Agreement and General Release" (settlement agreement). At issue here is section 3.8 of the settlement agreement, in which appellant agreed that in consideration for the settlement payments and other benefits from the City, he would not "represent, participate, or advocate for, any Alhambra employee(s)," including AFA members, "in any matter involving the CITY and/or its agents or employees . . . from September 21, 2007 through October 28, 2012." Appellant further agreed that he would "not campaign for, solicit, serve nor accept any AFA position including as one of its officers, board or committee members, or in any appointed position serving the AFA board or its members from September 21, 2007 through October 28, 2012."

A year after the settlement agreement was signed, the City learned that on October 7, 2008, appellant participated in an AFA meeting in which he advocated that AFA members join a planned demonstration against the City. The City also learned that on October 9, 2008, appellant took part in a protest by City employees against the City, while wearing his AFA shirt. On December 19, 2008, the City sent written notification to appellant that it believed his actions breached the settlement agreement and demanded that he cease and desist such activities. In a followup telephone call on December 26, 2008, the City again notified appellant that he was in breach of the settlement agreement. Appellant refused to confirm his future compliance with the settlement agreement.

On January 20, 2009, the City sued appellant for breach of contract, money had and received, and declaratory relief. The first and second causes of action deal with an overpayment by the City of $5,328.33, which appellant allegedly refuses to repay under the settlement agreement, and are not at issue here. The third cause of action for declaratory relief alleges that an "actual controversy has arisen and now exists" between the parties "concerning their respective rights and duties" under section 3.8 of the settlement agreement; the City desires "a judicial determination that [appellant's] conduct described

in this Complaint was in violation of Section 3.8"; the City desires "a judicial determination of the validity of Section 3.8"; and "[a] judicial declaration is necessary and appropriate at this time under the circumstances" in order for the City to "ascertain its rights and [appellant's] duties under Section 3.8." In his answer, appellant admits these allegations in the third cause of action.

Appellant countersued, seeking a nearly identical judicial declaration. He also removed the case to federal court. In its order remanding the case to state court, the federal court stated: "The City's claim seeks a judicial determination as to (1) the validity of Section 3.8 of the Agreement, and (2) whether [appellant's] conduct violated Section 3.8. . . . The claim involves a dispute regarding the validity of a contract provision and a party's alleged violation of that provision. As such it can be resolved without *necessarily* raising a stated federal issue. Because the City's third claim arises out of a contract dispute, it does not arise under the Constitution, laws, or treaties of the United States."

Shortly after the matter was remanded, appellant filed an anti-SLAPP motion to strike the City's third cause of action for declaratory relief. The City opposed the motion, which the trial court denied. The court found that appellant had failed to meet the first prong of the anti-SLAPP analysis, because the third cause of action did not arise from appellant's exercise of free speech or petitioning rights, but from "the controversy over the validity and enforceability of Section 3.8 of the Settlement Agreement." The court further stated, "This is apparently why defendant HIMSELF seeks declaratory relief regarding the same section of the Settlement Agreement . . . ." The court then awarded the City its attorney fees of $5,221.85 on the grounds that appellant's anti-SLAPP motion was "frivolous and solely intended to cause unnecessary delay." This appeal followed.

## DISCUSSION

I. *The Anti-SLAPP Statute and the Standard of Review.*

■ The anti-SLAPP statute is aimed at curbing "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a); see *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 738–739 [3 Cal.Rptr.3d 636, 74 P.3d 737].) The statute provides in relevant part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff

will prevail on the claim." (§ 425.16, subd. (b)(1).) ■ An act " 'in furtherance of' " the right of petition or free speech includes "any written or oral statement or writing made before a . . . judicial proceeding"; "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body"; "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest"; or "any other conduct in furtherance of the exercise of the constitutional right of petition . . . of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(1)–(4).)

■ There are two components to a motion to strike brought under section 425.16. Initially, the party challenging the lawsuit has the threshold burden to show that the cause of action arises from an act in furtherance of the right of petition or free speech. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965 [12 Cal.Rptr.3d 54, 87 P.3d 802]; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) Once that burden is met, the burden shifts to the complaining party to demonstrate a probability of prevailing on the claim. (*Zamos v. Stroud, supra*, at p. 965; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76 [124 Cal.Rptr.2d 519, 52 P.3d 695] (*Cotati*).) To satisfy this prong, the plaintiff " 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733]; see also *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 568 [92 Cal.Rptr.2d 755] [to establish a probability of prevailing, a plaintiff must substantiate each element of the alleged cause of action through competent, admissible evidence].) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

We independently review the record to determine whether the asserted causes of action arise from the defendant's free speech or petitioning activity, and, if so, whether the plaintiff has shown a probability of prevailing. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 [46 Cal.Rptr.3d 638, 139 P.3d 30]; *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 [12 Cal.Rptr.3d 786].) We consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2); see *Flatley v. Mauro* (2006) 39 Cal.4th 299, 326 [46 Cal.Rptr.3d 606, 139 P.3d 2].) We do not reweigh the evidence, but accept as true all evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated the

evidence submitted by the plaintiff as a matter of law. (*Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 105–106 [15 Cal.Rptr.3d 215]; *Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 573–574 [104 Cal.Rptr.3d 628].) If the trial court's decision denying an anti-SLAPP motion is correct on any theory applicable to the case, we may affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion. (*Robles v. Chalilpoyil, supra,* at p. 573.)

## II. *The City's Declaratory Relief Claim Does Not Arise from Protected Activities.*

It is undisputed that appellant's alleged activities on October 7 and 9, 2008, involving demonstrations against the City constitute free speech or petitioning activities protected under section 425.16. It is also undisputed that the City's complaint was filed shortly after these alleged activities took place and that these activities triggered the City's lawsuit.

■ But "the mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. [Citation.] Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 89, citing *Cotati, supra,* 29 Cal.4th at pp. 76–78.) "The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights.' [Citations.]" (*Cotati, supra,* at p. 77.) As Division One of our district recently noted: "In deciding whether an action is a SLAPP, the trial court should distinguish between (1) speech or petitioning activity that is mere *evidence* related to liability and (2) liability that is *based on* speech or petitioning activity." (*Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1214–1215 [104 Cal.Rptr.3d 692].)

We conclude that the City's declaratory relief claim does not arise from appellant's protected activities, but from an actual, present controversy between the parties regarding the scope and enforceability of section 3.8 of the settlement agreement. This is made clear by the specific allegations in the City's complaint; the admissions in appellant's answer; the nearly identical declaratory relief claim alleged by appellant in his counterclaim against the City; and the federal court's order remanding the action. Indeed, appellant's anti-SLAPP motion acknowledges that "This lawsuit arises out of a Settlement Agreement . . . executed between the City and Defendant Robert

D'Ausilio." While appellant's protected speech activities may have alerted the City that an actual controversy existed regarding the legality of section 3.8, the speech itself does not constitute the controversy. The City did not sue appellant because he engaged in protected speech; the City sued him because it believed he breached a contract which prevented him from engaging in certain speech-related conduct and a dispute exists as to the scope and validity of that contract.

Appellant's argument that the trial court "incorrectly" relied on *Cotati* in denying his motion is without merit. In that case, after the City of Cotati passed a mobilehome rent stabilization ordinance, owners of mobilehome parks sued the city in federal court for declaratory relief, seeking a declaration that the ordinance was unconstitutional. The city then sued the owners in state court for declaratory relief, seeking a declaration of the parties' respective rights and duties under the ordinance and that the ordinance was constitutional, valid and enforceable. (*Cotati, supra,* 29 Cal.4th at p. 72.) In ruling on the owners' anti-SLAPP motion, the trial court found that the city's state lawsuit arose from the owners' filing of the earlier federal court action, and struck the city's declaratory relief claim. (*Id.* at pp. 72–73.)

The Court of Appeal and Supreme Court disagreed, holding that the motion should have been denied because the city's action arose from the underlying controversy surrounding the legality of the ordinance, not the owners' petition rights and act of suing in federal court. (*Cotati, supra,* 29 Cal.4th at p. 74.) The Supreme Court stated: "In this case, as the Court of Appeal stated, a dispute exists between the parties over the constitutionality of Cotati Ordinance No. 680. And just as Owners' lawsuit itself was not the actual controversy underlying Owners' request for declaratory relief in federal court, neither was that lawsuit the actual controversy underlying City's state court request for declaratory relief. Rather, the actual controversy giving rise to both actions—the fundamental basis of each request for declaratory relief— was the same underlying controversy respecting City's ordinance. City's cause of action therefore was not one arising from Owners' federal suit. Accordingly, City's action was not subject to a special motion to strike." (*Id.* at p. 80, fn. omitted.) The same is true here.

Appellant's reliance on *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th 53 as support for his claim that the City's declaratory relief claim arises from his protected speech activity is misplaced. There, the defendant served the plaintiff's predecessors in interest with notices of intent to sue for alleged violations of Proposition 65 regarding groundwater pollution. Instead of asking the defendant to clarify its notice, the plaintiff filed a lawsuit for declaratory and injunctive relief, seeking a declaration that the notice failed to comply with the California Code of Regulations. (*Equilon Enterprises, supra,*

at p. 58.) The defendant moved to strike the complaint under section 425.16, which the trial court granted. (29 Cal.4th at p. 58.) The Court of Appeal and Supreme Court agreed with the ruling. The Supreme Court found that the plaintiff's action for declaratory and injunctive relief arose from the defendant's activity in furtherance of its constitutional rights of speech or petition, i.e., the filing of the Proposition 65 intent-to-sue notices. (*Equilon Enterprises, supra,* at p. 67.)

By contrast here, the City's declaratory relief claim involves an actual dispute between the parties regarding the validity of a contract provision and the parties' rights and obligations under that contract provision. The declaratory relief claim arises from a contract dispute; it does not arise from actions taken by appellant in furtherance of his constitutional rights.

Because appellant failed to show that the City's declaratory relief claim arose from his protected activities, we do not reach the second prong of the anti-SLAPP analysis of whether the City can show a probability of prevailing on its cause of action.

III. *Attorney Fees.*

Both parties raise issues as to attorney fees. Appellant contends that the trial court's award of attorney fees to the City in denying the anti-SLAPP motion must be reversed. At the hearing on the motion, the court specifically directed the issue of attorney fees to be addressed by separate motion. As respondent points out, appellant did not file a notice of appeal from the subsequent order awarding attorney fees, or otherwise indicate in his notice that he was appealing from this order. (See *Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 222 [64 Cal.Rptr.3d 495] [" 'When a party wishes to challenge both a final judgment *and* a postjudgment costs/attorney fee order, the normal procedure is to file *two separate appeals* . . . .' "].) In any event, appellant's only argument in support of his request for reversal of attorney fees is that the trial court erred in denying his anti-SLAPP motion. Because we have concluded that the denial was correct, appellant has provided no basis for reversal.

The City requests attorney fees on appeal. It argues that because appellant's appeal "raises no new permissible arguments that change the result, his appeal [like his motion] is frivolous and was only intended to cause further delay of this litigation." We agree. "The right to attorney fees extends to attorney fees on appeal as well." (*Morrow v. Los Angeles Unified School Dist.* (2007) 149 Cal.App.4th 1424, 1446 [57 Cal.Rptr.3d 885]; see also *Carpenter v. Jack in the Box Corp.* (2007) 151 Cal.App.4th 454, 461 [59 Cal.Rptr.3d 839] ["The trial court's authority to award fees and costs under

section 425.16, subdivision (c), includes authority to award fees incurred in responding to an appeal of an order granting or denying a special motion to strike, or of an order awarding attorney fees in connection with such motion."].) The City is awarded its attorney fees on appeal. The amount of such fees is to be determined by the trial court upon motion by the City. (*Morrow v. Los Angeles Unified School Dist., supra,* at p. 1446; *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 660 [49 Cal.Rptr.2d 620].)

## DISPOSITION

The order denying appellants' anti-SLAPP motion is affirmed. The City is entitled to recover its costs and attorney fees on appeal.

Ashmann-Gerst, J., and Chavez, J., concurred.