Filed 10/29/13  Arout v. Lamel CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SOHIAL AROUT,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>BARRY H. LAMEL et al.,<br><br>    Defendants and Respondents. | B242873<br><br>(Los Angeles County<br>Super. Ct. No. BC481043) |

APPEAL from an order of the Superior Court of Los Angeles County.  Terry A. Green, Judge.  Affirmed.

Sohial Arout, in pro. per., for Plaintiff and Appellant.

Early, Maslach & O'Shea, John A. Peterson; Law Office of Priscilla Slocum and Priscilla Slocum, for Defendants and Respondents.

_____

Plaintiff and appellant Sohial Arout (Arout), who has filed this appeal in propria persona, appeals from an order granting a special motion to strike under Code of Civil Procedure section 425.16, the "anti-SLAPP statute,"[1] filed by defendants and respondents.[2]  We affirm.  We find that Arout's causes of action for breach of lease, malicious prosecution, wrongful eviction and declaratory relief arise out of protected activities and that he failed to show a probability of prevailing on these claims.

**FACTUAL AND PROCEDURAL BACKGROUND**

**The Lease**

Arout was a tenant of commercial property used for automotive-related businesses pursuant to a "Standard Industrial/Commercial Multi-Tenant Lease" (the Lease) with Lamel's predecessor.  Arout operated a smog testing station called "Express Smog" (the property).  In January 2009, about six months before the Lease was set to expire on July 15, 2009, Arout renewed the Lease in writing for another five years.

Paragraph 6.1 of the Lease provides that "Lessee shall not use or permit the use of the Premises in a manner that is unlawful, creates damage, waste or a nuisance, or that disturbs occupants of or causes damage to neighboring premises or properties."

Paragraph 13.1 defines a "default" as "a failure by the Lessee to comply with or perform any of the terms, covenants, conditions or Rules and Regulations under this Lease."  Subdivision (d) defines a "breach" as a "Default by Lessee as to the terms, covenants, conditions or provisions of the Lease . . . where such Default continues for a period of 30 days after written notice; provided, however, that if the nature of Lessee's Default is such that more than 30 days are reasonably required for its cure, then it shall

---

[1]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

SLAPP is an acronym for strategic lawsuits against public participation.  An order granting or denying a special motion to strike under section 425.16 is directly appealable. (§§ 425.16, subd. (i), 904.1, subd. (a)(13).)

[2]    Defendants and respondents are Barry H. Lamel, individually and as trustee of the Barry H. Lamel Trust; Landview Properties, Inc.; and Harrison K. Smalley (collectively Lamel).

2

not be deemed to be a Breach if Lessee commences such cure within said 30 day period and thereafter diligently prosecutes such cure to completion."

Paragraph 13.2, subdivision (a) of the Lease provides that "In the event of a Breach, Lessor may, with or without further notice or demand, and without limiting Lessor in the exercise of any right or remedy which Lessor may have by reason of such Breach:  [¶]  (a) Terminate Lessee's right to possession by any lawful means, in which case this Lease shall terminate and Lessee shall immediately surrender possession to Lessor."  Subdivision (a) further states that "if a notice and grace period required under Paragraph 13.1 was not previously given, a notice to pay rent or quit, or to perform or quit given to Lessee under the unlawful detainer statute shall also constitute the notice required by Paragraph 13.1."

Under Paragraph 13.6, subdivision (a), "Lessor shall not be deemed in breach of this Lease" unless Lessee provides at least 30 days "written notice specifying wherein such obligation of Lessor has not been performed."

**Arout's Conduct**

During Arout's tenancy, Lamel received repeated complaints from neighboring tenants that Arout engaged in heated, confrontational disputes using abusive language concerning the use of common areas and the customers of other tenants parking in spaces assigned to Arout.  On one occasion, Arout threatened to beat up the tenant next door, Antonio Figueroa (Figueroa).

On April 6, 2009, Arout was observed and photographed spraying carburetor cleaner four or five times into a large industrial fan in front of Figueroa's body shop.  The cleaner is toxic, "highly volatile," and can burn skin and eyes.  The fumes from the cleaner made it difficult for Figueroa to breathe and caused him to cough.  The spray hit at least four cars in his shop, including a freshly painted car that had to be repainted. Figueroa spent about $3,000 to repair the damage.

Immediately after the spraying incident, Arout called the police, complaining that Figueroa was painting cars outside of the body shop in the common areas.  One of the responding officers, Tom Montague of the Azusa Police Department, could still smell the

3

toxic chemical when he arrived. Officer Montague advised Lamel to evict Arout based on Arout's escalating physical violence and the numerous calls the police had received both from Arout and from the other tenants complaining about Arout. The other tenants signed and circulated a petition in July 2009 demanding that Arout be removed from the property.

**Notice to Quit**

Lamel consulted with attorneys, who served Arout with a 30-day notice to quit the property on or about July 17, 2009. The notice advised Arout that he had "incurably breached" the Lease by spraying the toxic cleaner into Figueroa's body shop and by repeatedly disturbing and engaging in on-going disputes with the occupants of the neighboring premises. Arout did not vacate the property.

**The Unlawful Detainer Action**

On August 27, 2009, Lamel filed an unlawful detainer action against Arout. The case proceeded to a five-day bench trial. Arout did not testify. On February 11, 2010, the trial court issued a 23-page statement of decision, finding in favor of Lamel. The trial court found that the April 6, 2009, spraying incident constituted a private nuisance and that Arout had independently breached the Lease by his repeatedly disruptive conduct toward his neighbors, and that these actions were incurable, permitting eviction. The court awarded possession of the property to Lamel, and awarded Lamel holdover rent of nearly $7,000 and attorney fees and costs of approximately $23,000.

On or about March 1, 2010, Arout vacated the property, which was leased to Figueroa to expand his operations. Arout appealed to the appellate division of the trial court. On July 14, 2011, the appellate division reversed the judgment on the sole ground that the trial court abused its discretion in denying Arout a trial by jury, and remanded the case for retrial by jury. The next day, Lamel voluntarily dismissed the unlawful detainer action without prejudice.

**The Instant Action**

On March 16, 2012, Arout sued Lamel for breach of contract, malicious prosecution, wrongful eviction, and declaratory relief. Lamel filed a special motion to

strike with supporting evidence. Arout opposed the motion and submitted his and his attorney's declarations. The trial court granted all but three of Lamel's objections to Arout's evidence. The trial court granted the motion.[3] While Arout was represented by counsel in the trial court below, he has filed his appellate briefs in propria persona.

## DISCUSSION

### I.  The Anti-SLAPP Statute and the Standard of Review

The anti-SLAPP statute provides that "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) An act "in furtherance of" the right of petition or free speech includes "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law"; "any written or oral statement or writing made in connection with an issue under consideration or review by . . . any other official proceeding authorized by law"; "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest"; or "any other conduct in furtherance of the exercise of the constitutional right of petition or . . . of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

There are two components to a motion to strike brought under section 425.16. Initially, the defendant has the threshold burden to show that the cause of action arises from an act in furtherance of the right of petition or free speech. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) Once that burden is met, the burden shifts to the plaintiff to demonstrate a

---

[3]     Lamel also filed a demurrer to be heard at the same time as the hearing on the anti-SLAPP motion. While Arout repeatedly argues that the trial court made no ruling on the demurrer, the trial court specifically found the demurrer to be moot in light of its ruling on the anti-SLAPP motion.

probability of prevailing on the claim.  (*Zamos v. Stroud, supra*, at p. 965; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76.)  To satisfy this prong, the plaintiff "'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'"  (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821; *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 568 [to establish a probability of prevailing, a plaintiff must substantiate each element of the alleged cause of action through competent, admissible evidence]; *Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 713 [same].)  "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute."  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).)

We independently review the record to determine whether the asserted causes of action arise from the defendant's free speech or petitioning activity, and, if so, whether the plaintiff has shown a probability of prevailing.  (*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1306; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3; *HMS Capital, Inc. v. Lawyers Title Co*. (2004) 118 Cal.App.4th 204, 212.)  In making these determinations, we consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2); see *Flatley v. Mauro* (2006) 39 Cal.4th 299, 326; *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67.)  In determining whether the plaintiff has met its burden, we do not reweigh the evidence, but accept as true all evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated the evidence submitted by the plaintiff as a matter of law. (*Mann v. Quality Old Time Service, Inc*. (2004) 120 Cal.App.4th 90, 105–106.)

## II.  Protected Activities

### A.  Breach of Contract

The complaint alleges that Lamel "breached the Lease by not complying with the provisions of Paragraph 13 in issuing the 30-day notice to quit purporting to terminate the

tenancy before filing and prosecuting the Eviction Action, obtaining a judgment, at least temporarily, and further by causing law enforcement officials to evict Plaintiff from the Premises, all in violation of the terms of the Lease." The complaint continues, "[Lamel] repudiated the Lease by declaring a forfeiture of the Lease, filing suit to enforce such declaration, along with demands that Plaintiff vacate the Premises, all without first having allowed Plaintiff at least 30 days to remedy the claimed or perceived breaches or defaults, as previously described above."

These allegations make clear that the contract claim arises from protected activities. Although Arout argues that he is simply complaining that the notice to quit violated Paragraph 13.1 of the Lease because it did not provide an alternative notice to cure, the "focus" of the statute "is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability . . . ." (*Navellier, supra*, 29 Cal.4th at pp. 89, 92.) "[A] plaintiff cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as a garden variety tort or contract claim when in fact the claim is predicated on protected speech or petitioning activity. [Citation.] Accordingly, we disregard the labeling of the claim [citation] and instead 'examine the principal thrust or gravamen of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies' and whether the trial court correctly ruled on the anti-SLAPP motion." (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1271–1272. The "gravamen" of a cause of action is "plainly meant the acts on which the claims were based." (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1190, fn. 9.)

*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467 (*Feldman*) is on point. Following the filing of an unlawful detainer complaint, the subtenants cross-complained for, inter alia, breach of contract, retaliatory eviction and wrongful eviction. The landlord filed an anti-SLAPP motion, which the trial court denied as to all causes of action except retaliatory eviction. (*Id*. at p. 1473.) The appellate court found that the motion should have been granted as to all other causes of action except negligent misrepresentation. (*Ibid*.) The *Feldman* court found that prosecution of the unlawful

7

detainer action was "indisputably" protected activity, and that "[s]ervice of the three-day notice to quit [in this case] was also protected activity within the meaning of section 425.16." (*Id*. at p. 1480.) The court reasoned that the filing of the notice to quit was a legally required prerequisite to the filing of the unlawful detainer action, and was therefore a protected communication. (*Ibid*.) The court rejected the subtenants' argument that their breach of contract cause of action was unprotected because it was separate and distinct from the protected activities. (*Id*. at p. 1483.) This is the same argument Arout makes here. The *Feldman* court noted "it is established that conduct alleged to constitute a breach of contract may also come within the statutory protections for protected speech or petitioning." (*Id*. at pp. 1483–1484, citing *Navellier, supra*, 29 Cal.4th at p. 92.) The court also noted that the alleged breaches consisted of threats of eviction, the service of the three-day notice to quit, and the filing of the unlawful detainer action. According to the court, "The activities that allegedly breached the contract *were* the protected activities. The claim that the eviction was 'illegal' because the [subtenants] were lawfully in possession under the Addendum does not transform these protected activities into something different or independent. The breach of contract cause of action arose from protected activity." (*Feldman, supra,* at p. 1484.) The same is true here.

### B. Malicious Prosecution

It is settled, as Arout concedes, that a cause of action for malicious prosecution arises from protected activity. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741.)

### C. Wrongful Eviction

The complaint alleges that Lamel "used the 30-day notice to quit followed by the Eviction Action, and Plaintiff losing possession of the Premises, as a ruse to be able to allow the tenancy of [Figueroa] to expand its operation. . . ." Plainly, Arout's cause of action for wrongful eviction arises from Lamel's protected activities of serving the notice to quit and filing the unlawful detainer action. (See *Wallace v. McCubbin, supra*, 196 Cal.App.4th at p. 1183 ["It makes no sense for [plaintiffs] to argue that their cause of action for defendants' attempt to evict them wrongfully is not based on defendants'

8

alleged attempt to evict them" by serving the notice to quit and filing the unlawful detainer action].)

### D. Declaratory Relief

The complaint alleges that an actual controversy exists between the parties regarding their rights "to restore Plaintiff to possession of the Premises after the Appellate Division reversed the judgment in the Eviction Action and [Lamel] thereafter voluntarily dismissed the entire Action without prejudice, with the result that Plaintiff has remained out of possession of the Premises he leased. . . ." As a result, Arout desires a declaration "as to whether Plaintiff is entitled to be restored to possession of the Premises. . . ." Again, this cause of action arises from Lamel's protected activities of serving the notice to quit and filing the unlawful detainer action.

## III. Probability of Prevailing

Because Lamel met the initial burden of showing that Arout's four causes of action arise from constitutionally protected activity, under section 425.16 the burden shifted to Arout to show a probability of prevailing on each of his causes of action. We conclude that Arout failed to meet his burden.

### A. Breach of Contract

Arout argues that Lamel breached paragraph 13.1 of the Lease because the 30-day notice to quit did not contain an alternative notice to cure. For the reasons discussed below, no alternative notice was required because Lamel's evidence established that Arout created an incurable nuisance.

Under Paragraph 6.1 of the Lease, "Lessee shall not use or permit the use of the Premises in a manner that is unlawful, creates damage, waste or *nuisance*, or disturbs occupants of or causes damage to neighboring premises or properties." (Emphasis added.) Under Paragraph 13.2 of the Lease and section 1161, subdivision (4), no notice to cure is required for a nuisance that cannot be cured.

Civil Code section 3479 defines a "nuisance" as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, . . ." A

9

single incident may constitute a private nuisance. (*Ambrosini v. Alisal Sanitary Dist.* (1957) 154 Cal.App.2d 720, 727; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 103.)

Arout has never denied that he engaged in the spraying incident on April 6, 2009. In opposing Lamel's anti-SLAPP motion, Arout had no admissible evidence to contradict Lamel's evidence that Arout sprayed a toxic chemical into his neighbor Figueroa's body shop, the fumes from the chemical caused Figueroa to cough and have trouble breathing, the chemical caused damage to several cars in Figueroa's shop amounting to approximately $3,000, and a police officer who responded to the scene could still smell the chemical in the air. Such conduct constituted a private nuisance.

Furthermore, Arout did not show how he could "cure" the nuisance, nor could he. The spraying incident was a single, completed incident that could not be undone. By contrast, a "continuing" nuisance is an "ongoing . . . disturbance" for which successive lawsuits may be brought. (*Gehr v. Baker Hughes Oil Field Operations, Inc.* (2008) 165 Cal.App.4th 660, 667–668.)

Because Arout created a private, incurable nuisance, he failed to show that Lamel breached the Lease by serving a notice to quit, rather than an alternative notice to cure.

### B. Malicious Prosecution

To prevail on a malicious prosecution claim, Arout was required to show that the unlawful detainer action was (1) prosecuted by Lamel, (2) pursued to a legal termination in Arout's favor, (3) brought and prosecuted without probable cause, and (4) initiated with malice. (*Soukup v. Law Offices of Herbet Hafif, supra,* 39 Cal.4th at p. 292.)

"Favorable termination 'is an essential element of the tort of malicious prosecution, and it is strictly enforced.'" (*StaffPro, Inc. v. Elite Show Services, Inc.* (2006) 136 Cal.App.4th 1392, 1400.) A mere dismissal of the proceeding is insufficient; rather, "the termination must reflect on the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit." (*Contemporary Services, Corp. v. Staff Pro, Inc.* (2007) 152 Cal.App.4th 1043, 1056.)

The following facts are undisputed: The trial court in the unlawful detainer action found in favor of Lamel and awarded possession of the property to Lamel; the appellate division of the superior court reversed the judgment in favor of Lamel on the sole basis that Arout was entitled to have the action tried by a jury; and the next day Lamel voluntarily dismissed the action without prejudice. In support of the anti-SLAPP motion, Lamel presented evidence that dismissal of the action was not based on the merits. The declaration of Barry H. Lamel stated that he made the decision to dismiss the unlawful detainer action because Arout was no longer in possession of the property and to avoid further litigation costs. Arout had no admissible evidence to contradict this evidence. Thus, Arout could not establish the first element of his malicious prosecution claim. If the plaintiff cannot establish any one of the three elements of malicious prosecution, the claim fails. (*StaffPro, Inc. v. Elite Show Services, Inc.*, *supra,* 136 Cal.App.4th at p. 1398.)

### C.  Wrongful Eviction

A wrongful eviction occurs when the person recovering the property had no right to dispossess the other party from the property. (*Cunningham v. Universal Underwriters* (2002) 98 Cal.App.4th 1141, 1149–1150.)

As discussed above, Lamel was required to serve only a notice to quit and not a notice to cure, under the circumstances here. Lamel provided the 30-day notice to quit pursuant to the Lease before filing the unlawful detainer action. It is undisputed that Arout did not vacate the property until more than seven months later. Arout's continued possession of the property was without Lamel's permission.

Therefore, Arout has not shown a probability of prevailing on his wrongful eviction claim.

### D.  Declaratory Relief

The complaint prayed for a "determination and declaration that Plaintiff is entitled to be restored to possession of the Premises concurrent with his Lease for the Premises not being forfeited and the Lease is not extinguished so that Plaintiff is in his second 5-year term of his Lease." Because the basis for Arout's declaratory relief action was

11

Lamel's failure to serve an alternative notice to cure, and we have already concluded that Lamel was only required to serve a notice to quit, Arout has not shown a probability of prevailing on his declaratory relief claim.

## DISPOSITION

The order granting the anti-SLAPP motion is affirmed. Lamel is entitled to recover attorney fees and costs on appeal, in an amount to be determined by the trial court on remand. (*Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1405; *Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 812–813; *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1499–1500.)

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
                    ASHMANN-GERST


We concur:


_____, P. J.
            BOREN


_____, J.*
            FERNS


---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


12