Filed 9/30/15  Morin v. Kennedy CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT MORIN et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>LARRY KENNEDY,<br><br>    Defendant and Appellant. | B255998<br><br>(Los Angeles County<br>Super. Ct. No. SC121246) |

APPEAL from an order of the Superior Court of Los Angeles County, Gerald Rosenberg, Judge.  Affirmed.

Fuchs & Associates, John R. Fuchs and Gail S. Gilfillan, for Plaintiffs and Respondents.

Law Offices of Brian R. Condon and Brian R. Condon, for Defendant and Appellant.

Defendant and appellant Larry Kennedy (Kennedy), individually and as trustee of the Kennedy Family Trust, appeals an order denying his special motion to strike a complaint filed by plaintiffs and respondents Susan Morin and Robert Morin (the Morins) and awarding the Morins $2,500 in attorney fees as the prevailing parties on the motion.[1]

The essential issue presented is whether the Morins' instant lawsuit against Kennedy arose out of Kennedy's protected activity within the meaning of section 425.16.

As discussed below, nine of the Morins' causes of action did not arise out of protected activity by Kennedy in filing an unlawful detainer action. Rather, they arose primarily out of Kennedy's alleged failure to maintain the leased premises.

The Morins' tenth cause of action, malicious prosecution, did arise out of Kennedy's protected activity in filing an unlawful detainer action against the Morins; however, with respect to the malicious prosecution claim, the Morins met their burden to show a reasonable probability of prevailing thereon.

Therefore, the order denying Kennedy's special motion to strike and awarding attorney fees to the Morins is affirmed in its entirety.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Pleadings.*

On August 23, 2013, the Morins filed a complaint against Kennedy asserting the following causes of action: (1) breach of the implied warranty of habitability; (2) nuisance; (3) spoliation of evidence; (4) breach of contract; (5) negligence; (6) fraud by intentional misrepresentation; (7) promissory estoppel; (8) intentional infliction of

---

[1] An order granting or denying a special motion to strike is appealable. (Code Civ. Proc., § 425.16, subd. (i), § 904.1, subd. (a)(13).)

All further statutory references are to the Code of Civil Procedure, unless otherwise specified.

[2] Kennedy does not assert error with respect to the trial court's award of attorney fees to the Morins.

2

emotional distress; (9) negligent infliction of emotional distress; and (10) malicious prosecution. The Morins pled in relevant part:

In July 1995, they executed a written month-to-month lease for a Venice apartment owned by Kennedy at the monthly rate of $1,600. In 1999, Kennedy invested in the Morins' start-up company and the parties agreed that Kennedy would not charge the Morins for their occupancy. Beginning in 2001, the Morins repeatedly notified Kennedy of defective and unsafe conditions in the apartment, such as broken windows, inadequate drainage, inoperable kitchen appliances, damaged electrical wiring, mold, and rodent and insect infestation. In July 2006, Susan Morin was severely injured while taking a shower when the water suddenly turned so hot that it scalded and burned her, causing her to be hospitalized at the Grossman Burn Center for at least 20 days. In August 2006, the parties entered into a forbearance agreement, whereby the Morins agreed not to sue Kennedy in exchange for Kennedy's promise to make repairs and his allowing the Morins to continue occupying the apartment rent free. However, in June 2013, Kennedy served the Morins with a three-day notice to pay rent or quit, demanding they pay $32,724 in rent allegedly due for the prior 12-month period. Kennedy then filed an unlawful detainer action against the Morins. On the eve of the unlawful detainer trial, which was scheduled for July 22, 2013, Kennedy suddenly dismissed the action, allegedly "acknowledging to the court that [he] had no evidence to support the verified allegations in the unlawful detainer complaint."[3]

---

[3] To flesh out the procedural history of this dispute, we add the following material gleaned from the record: A few days after Kennedy dismissed the initial unlawful detainer action, he served a second three-day notice specifying unpaid rent in the amount of $27,000, and then filed a second unlawful detainer action. That action was tried to a jury in November 2013, which returned a special verdict in favor of the Morins, finding the premises were 100 percent uninhabitable and therefore no rent was owed.

3

a. *First cause of action:  breach of implied warranty of habitability*.

In their first cause of action, the Morins alleged that Kennedy had actual knowledge of defective conditions in their apartment that constituted breaches of the implied warranty of habitability, including "drainage problems, deteriorated flooring, electrical and plumbing defects, leaking roof, broken windows, and other unsafe and dangerous conditions."

b. *Second cause of action:  nuisance*.

In the second cause of action, the Morins alleged the defective, substandard and hazardous conditions of the premises constituted a nuisance.

c. *Third cause of action:  spoliation of evidence*.

In the third cause of action, the Morins alleged that in 2006, Kennedy directed another tenant in the building, Jason Potts, to go into the Morins' apartment, remove the shower door that had jammed and trapped Susan Morin in the shower, and replace it with a shower rod and shower curtain, for the express purpose of destroying evidence that could be used against Kennedy in a personal injury lawsuit.

d. *Fourth cause of action:  breach of contract.*

In the fourth cause of action, the Morins pled that Kennedy, by serving the three-day notice to pay rent or quit in June 2013, and then filing and prosecuting an unlawful detainer action, breached the 2006 forbearance agreement.

e. *Fifth cause of action:  negligence*.

The fifth cause of action alleged that Kennedy was negligent in failing to maintain the premises, allowing the property to deteriorate, failing to comply with notices from governmental agencies of code violations and deficiencies, and failing to keep the premises in good repair.

f. *Sixth cause of action:  intentional misrepresentation*

In the sixth cause of action, the Morins pled that at the time Kennedy entered into the forbearance agreement and promise of free rent for the premises, Kennedy had no intention of allowing the Morins to remain in the premises rent free, and he made those

false representations in order to lull the Morins into a false sense of security and to induce them not to file suit for Susan Morin's injuries. Further, it was not until June 2013, when Kennedy served the three-day notice to pay rent or quit and the unlawful detainer action, that the Morins realized Kennedy's representations were false and that he never intended to comply with them.

g. *Seventh cause of action: promissory estoppel.*

In the seventh cause of action, the Morins asserted that given their reasonable reliance on Kennedy's 2006 promises and the forbearance agreement, any statute of limitations on their right to sue Kennedy for Susan Morin's injuries should be equitably tolled, and/or that Kennedy was equitably estopped from claiming that the statute of limitations for suing on Susan Morin's injuries had expired.

h. *Eighth and ninth causes of action: intentional and negligent infliction of emotional distress.*

These causes of action sought damages for emotional distress which the Morins allegedly suffered as a consequence of Kennedy's failure to maintain the premises in good repair and his false promise to the Morins that they could reside in their apartment rent free for as long as they wished, in exchange for their refraining from suing for Susan Morin's injuries.

i. *Tenth cause of action: malicious prosecution.*

Lastly, the tenth cause of action pled malicious prosecution by Kennedy in filing and prosecuting the unlawful detainer action which he commenced in June 2013, and suddenly dismissed on the eve of trial one month later, at which time he admitted he lacked evidence to support his claim.

2. *Kennedy's special motion to strike the Morins' complaint.*

On December 23, 2013, Kennedy filed a special motion to strike the Morins' action in its entirety pursuant to section 425.16. Kennedy's theory in bringing the motion was that "predating the Complaint in this action, [he] brought a valid Unlawful Detainer action against [the Morins] which was a privileged act of petitioning a court for

5

relief. . . . The matters complained of all relate to and/or arise from [the Morins']
resistance to being evicted for a failure to pay rent. Thus, this case is an improper effort
to . . . interfere with [Kennedy's] proper petitioning of a court of competent jurisdiction
to determine Unlawful Detainer against the Morins." Kennedy also sought $13,912.50 in
attorney fees.

3. *The Morins' opposition to Kennedy's special motion to strike.*

The Morins contended that of their 10 causes of action, only their malicious
prosecution claim was within the ambit of section 425.16. The Morins conceded a
malicious prosecution claim is subject to anti-SLAPP scrutiny, but they contended they
could establish a probability of prevailing on that claim. Specifically, the Morins
asserted the first underlying unlawful detainer claim, which was voluntarily dismissed by
Kennedy on the eve of trial, was favorably terminated on the merits; Kennedy admitted
he had overstated the amount of rent claimed to be due, and therefore he lacked probable
cause to bring the unlawful detainer action; and malice, which is a question of fact, could
be inferred from the circumstances, such as Kennedy's history of failing to maintain the
premises, his intentional destruction of evidence, and his overstating the amount of rent
that was allegedly due.

The Morins further argued that none of the other nine causes of action were based
on Kennedy's right to free speech or petition. Rather, they "all arose out of and [were]
related to Kennedy's acts and omissions *inter alia* in failing to repair and maintain the
Morins' Apartment and the building, in intentionally discarding evidence needed to prove
the cause of the burns Susan Morin suffered in the shower, in breaching the agreements
with the Morins to waive the rent and in inflicting emotional distress on the Morins by his
conduct."

4. *Trial court's ruling.*

On April 15, 2014, the matter came on for hearing and was taken under
submission. Thereafter, the trial court denied Kennedy's special motion to strike, stating:
"Defendant [Kennedy] fails to present the two-prong test. The claim herein does not

6

involve protected activity." The trial court also sustained various objections by the Morins to Kennedy's moving declarations, awarded the Morins $2,500 in attorney fees, and gave Kennedy 20 days to answer the complaint.

On April 25, 2014, Kennedy filed a timely notice of appeal from the order.

## CONTENTIONS

Kennedy contends: the first prong of the anti-SLAPP test is met because this case arises out of a landlord's protected prosecution of an unlawful detainer action; the Morins cannot meet their burden on the second prong of the anti-SLAPP test because they cannot show the sufficiency of their pleadings, overcome complete defenses or produce sufficient admissible evidence; and the trial court erroneously sustained objections to evidence proffered by Kennedy.

## DISCUSSION

1. *General principles regarding a special motion to strike.*

   a. *Overview.*

As stated in *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12 (*Simpson*), a strategic lawsuit against public participation, or SLAPP, "is a civil lawsuit that is aimed at preventing citizens from exercising their political rights or punishing those who have done so. ' "While SLAPP suits masquerade as ordinary lawsuits such as defamation and interference with prospective economic advantage, they are generally meritless suits brought primarily to chill the exercise of free speech or petition rights by the threat of severe economic sanctions against the defendant, and not to vindicate a legally cognizable right." ' [Citations.]" (*Simpson*, *supra*, 49 Cal.4th at p. 21.)

In 1992, "out of concern over 'a disturbing increase' in these types of lawsuits, the Legislature enacted section 425.16, the anti-SLAPP statute. (§ 425.16, subd. (a).) The statute authorized the filing of a special motion to strike to expedite the early dismissal of these unmeritorious claims. (§ 425.16, subds. (b)(1), (f).) To encourage 'continued participation in matters of public significance' and to ensure 'that this participation should not be chilled through abuse of the judicial process,' the Legislature expressly

7

provided that the anti-SLAPP statute 'shall be construed broadly.' (§ 425.16, subd. (a).)" (*Simpson*, *supra*, 49 Cal.4th at p. 21.)

A special motion to strike "involves a two-step process. First, the defendant must make a prima facie showing that the plaintiff's 'cause of action . . . aris[es] from' an act by the defendant 'in furtherance of the [defendant's] right of petition or free speech . . . in connection with a *public* issue.' (§ 425.16, subd. (b)(1).) If a defendant meets this threshold showing, the cause of action shall be stricken unless the plaintiff can establish 'a probability that the plaintiff will prevail on the claim.' " (*Simpson*, *supra*, 49 Cal.4th at p. 21, italics added, fn. omitted.)

b. *Determining the applicability of the anti-SLAPP statute to a plaintiff's claims.*

In determining whether the anti-SLAPP statute applies, we analyze whether the defendant's (Kennedy's) acts underlying the plaintiffs' (the Morins') causes of action were in furtherance of Kennedy's right of petition or free speech. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.)

The "principal thrust or gravamen" of the plaintiff's claim determines whether section 425.16 applies. (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188; accord *Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 319.) The " 'meaning of "gravamen" is clear; "gravamen" means the "material part of a grievance, charge, etc." [Citation.]' [Citation.] [¶] In the context of the anti-SLAPP statute, the 'gravamen is defined by the *acts on which liability is based . . . .*' [Citation.] The 'focus is on the principal thrust or gravamen of the causes of action, i.e., the *allegedly wrongful and injury-producing conduct* that provides the foundation for the claims. [Citations.]' [Citation.]" (*Renewable Resources Coalition, Inc. v. Pebble Mines Corp.* (2013) 218 Cal.App.4th 384, 396, original italics.)

As used in section 425.16, " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative,

8

executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

        c. *Standard of appellate review*.

Review "of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).)

2. *Apart from the malicious prosecution claim, the instant lawsuit against Kennedy did not arise out of his exercise of the right to free speech or petition in connection with a public issue.*

Kennedy's basic contention is that not only did his unlawful detainer action precede the Morins' lawsuit, but it was the basis or cause of the Morins' lawsuit.

By way of background, in *Navellier v. Sletten* (2002) 29 Cal.4th 82 (*Navellier*), the Supreme Court explained, "the mere fact that an action was filed *after* protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. [Citation.] Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of

9

action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]" (*Id.* at p. 89.) Therefore, merely because the Morins filed the instant action after Kennedy sued for unlawful detainer does not establish that the Morins' instant lawsuit arose from Kennedy's protected petitioning activity. Rather, the critical consideration is whether the Morins' causes of action are *based on* Kennedy's protected activity. (*Ibid.*)

> a. *Causes of action arising out of Kennedy's alleged failure to maintain the premises.*

Our review of the pleading discloses that the gravamen of the complaint is that Kennedy failed to maintain the premises in a safe and habitable condition. Specifically, the Morins' causes of action for breach of the implied warranty of habitability (first cause of action), nuisance (second cause of action), negligence (fifth cause of action), intentional infliction of emotional distress (eighth cause of action), and negligent infliction of emotional distress (ninth cause of action)[4], all were predicated on Kennedy's alleged failure to maintain the premises over the years. The substandard conditions pled in the complaint allegedly breached the implied warranty of habitability, created a nuisance, resulted in bodily injury to Susan Morin, and caused both of the Morins to suffer emotional distress. Clearly, these causes of action did not arise from Kennedy's protected activity in filing the unlawful detainer complaints.

---

[4] We note the negligent causing of emotional distress is not an independent tort, but rather, the tort of negligence. (*Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1072.)

10

b. *Spoliation claim.*

Likewise, the Morins' third cause of action for spoliation of evidence did not arise out of Kennedy's filing of the unlawful detainer litigation. The third cause of action alleged that in *2006*, Kennedy enlisted a neighbor to remove and destroy the shower door that had jammed and trapped Susan Morin in the shower, and to replace it with a shower rod and shower curtain. Thus, the spoliation claim did not arise out of Kennedy's protected petitioning activity in suing for unlawful detainer in 2013.

c. *Causes of action arising out of Kennedy's alleged breach of the forbearance agreement.*

The next three claims, for breach of contract (fourth cause of action), fraud by intentional misrepresentation (sixth cause of action), and promissory estoppel (seventh cause of action), all were predicated on the August 2006 forbearance agreement, whereby Kennedy allegedly promised to repair the premises and to allow the Morins to reside in their apartment rent free, in exchange for their promise not to sue Kennedy for Susan Morin's injuries. Kennedy allegedly breached the forbearance agreement by bringing the June 2013 unlawful detainer action. However, these causes of action did not arise out of Kennedy's exercise of his right to engage in petitioning activity. Rather, they arose from Kennedy's alleged breach of the 2006 forbearance agreement.

*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301 (*City of Alhambra*) is instructive. There, the defendant was a former city employee who entered into a settlement agreement with the city. The settlement agreement provided, inter alia, that the defendant would not represent or advocate for any city employee for five years. A year later, the city learned that the defendant had taken part in a protest by city employees, and it sent the defendant written notification that it believed his actions breached the settlement agreement. The city subsequently sued the defendant for declaratory relief, seeking a judicial determination that the defendant's conduct violated the settlement agreement. (*Id*. at pp. 1304-1305.)

11

The defendant filed an anti-SLAPP motion to strike the city's cause of action for declaratory relief. The trial court denied the motion, finding the defendant had failed to demonstrate that the declaratory relief claim arose from his free speech or petitioning activity. (*City of Alhambra*, *supra*, 193 Cal.App.4th at p. 1305.)

The reviewing court affirmed. It found undisputed both that the defendant's demonstrations against the city constituted free speech or petitioning activity, and that the city's complaint was filed shortly after these demonstrations took place. (*City of Alhambra*, *supra*, 193 Cal.App.4th at p. 1307.) Nonetheless, " 'the mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. [Citation.] Moreover, that a cause of action arguably may have been "triggered" by protected activity does not entail that it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity.' (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 89, citing *Cotati*, *supra*, 29 Cal.4th at pp. 76-78.) . . . As Division One of [the Second Appellate] district recently noted: 'In deciding whether an action is a SLAPP, the trial court should distinguish between (1) speech or petitioning activity that is mere *evidence* related to liability and (2) liability that is *based on* speech or petitioning activity.' (*Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1214-1215.)" (*City of Alhambra*, *supra*, at p. 1307.)

Applying these principles to its fact situation, *City of Alhambra* concluded that the city's declaratory relief claim arose from a controversy between the parties regarding the scope and enforceability of the settlement agreement, not from the defendant's protected activities, as demonstrated by the allegations of the city's complaint and the defendant's answer, among other things. (*City of Alhambra*, *supra*, 193 Cal.App.4th at p. 1307.) The court explained: "While appellant's protected speech activities may have alerted the [c]ity that an actual controversy existed regarding the legality of Section 3.8 [of the settlement agreement], the speech itself does not constitute the controversy. *The* [c]ity

12

*did not sue* [*defendant*] *because he engaged in protected speech; the* [*c*]*ity sued him because it believed he breached a contract which prevented him from engaging in certain speech-related conduct* and a dispute exists as to the scope and validity of that contract." (*Id.* at p. 1308, italics added.)

Here, by parity of reasoning, the Morins did not sue Kennedy because he engaged in protected activity by filing the unlawful detainer action; they sued him because he allegedly breached the forbearance agreement that purportedly entitled the Morins to remain in the apartment rent free. Therefore, the Morins' causes of action for breach of contract, intentional misrepresentation, and promissory estoppel did not arise from Kennedy's engaging in protected petitioning activity.

### d. *Malicious prosecution.*

The Morins properly concede that their cause of action against Kennedy for malicious prosecution of the unlawful detainer action is subject to the anti-SLAPP statute. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735-741 (*Jarrow*).) Therefore, with respect to the malicious prosecution claim, we will address below the second prong of section 425.16, i.e., whether the Morins established a probability that they will prevail on their malicious prosecution claim. [5]

### e. *Conclusion as to first prong.*

In sum, apart from the malicious prosecution claim, the Morins' lawsuit did not arise from protected activity by Kennedy and therefore did not implicate the anti-SLAPP statute. Therefore, with respect to the first nine causes of action, the denial of the special motion to strike was proper.

---

[5]     As noted, the trial court denied Kennedy's special motion to strike in its entirety on the ground the complaint did not involve protected activity. With respect to the malicious prosecution claim, the ruling was erroneous because the malicious prosecution claim did arise from Kennedy's protected petitioning activity. (*Jarrow*, *supra*, 31 Cal.4th at pp. 735-741.) Nonetheless, the error was harmless because, on our de novo review (*Soukup*, *supra*, 39 Cal.4th at p. 269, fn. 3), we conclude the Morins established a probability of prevailing on their malicious prosecution claim. Therefore, the trial court's refusal to strike the malicious prosecution claim was correct in result and must be upheld.

3. *Second prong analysis: the Morins met their burden to establish a reasonable probability of prevailing on their malicious prosecution claim.*

As discussed, because the malicious prosecution claim is subject to anti-SLAPP scrutiny (*Jarrow*, *supra*, 31 Cal.4th at pp. 735-741), we address whether the Morins met their burden to show a probability of prevailing thereon.

To establish a cause of action against Kennedy for maliciously prosecuting the initial unlawful detainer action, the Morins must plead and prove that it was (1) commenced by or at the direction of Kennedy and pursued to a legal termination in the Morins' favor; (2) brought without probable cause; and (3) initiated with malice. (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 676.)

The Morins met their burden with respect to the element of favorable termination. There is a " 'natural assumption that one does not simply abandon a meritorious action once instituted.' [Citations.]" (*Lackner v. LaCroix* (1979) 25 Cal.3d 747, 751.) Accordingly, Kennedy's "voluntary unilateral dismissal is considered a termination in favor of the defendant [the Morins] in the underlying action." (*Villa v. Cole* (1992) 4 Cal.App.4th 1327, 1335.)

The Morins also met their burden with respect to the element of probable cause. A three-day notice "that seeks rent in excess of the amount due is invalid and will not support an unlawful detainer action. [Citation.]" (*Levitz Furniture Co. v. Wingtip Communications, Inc*. (2001) 86 Cal.App.4th 1035, 1038.) Kennedy's moving declaration acknowledged the three-day notice contained a "fatal error in the calculation of rent demanded in the three-day notice." Kennedy's admitted inability to prevail at trial on the unlawful detainer action reflected that the unlawful detainer action was not legally tenable and thus was not supported by probable cause.

The Morins also satisfied their burden with respect to the element of malice. " 'Since parties rarely admit an improper motive, malice is usually proven by circumstantial evidence and inferences drawn from the evidence.' [Citation.]" (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 225.) A lack of probable cause is a factor that

14

may be considered in determining if the claim was prosecuted with malice, but the lack of probable cause must be supplemented by other, additional evidence.  (*Ibid.*)  The Morins submitted declarations stating that the substandard conditions in their apartment had existed for years and that Kennedy had refused to address them, despite multiple requests by the Morins, and even after he was cited by the Los Angeles Housing Department.  This was sufficient to support an inference of malice.

In view of the above, the Morins met their burden to establish a probability of prevailing on their malicious prosecution claim.  Therefore, the trial court properly denied Kennedy's special motion to strike the tenth cause of action.

4.  *Evidentiary issues not properly presented.*

Without any citation to the record and without reference to any supporting legal authorities, Kennedy contends the trial court erroneously sustained objections to his evidence.  Although the trial court separately ruled on 58 evidentiary objections by the Morins, Kennedy has not specified which of those rulings he is challenging on appeal, let alone presented a legal argument as to why those rulings constituted prejudicial error.

A contention that the trial court erred in excluding evidence is governed by Evidence Code section 354, which states in relevant part that a judgment shall not "be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice . . . ."  Inasmuch as Kennedy has not developed his argument in this regard and has not attempted to explain how any of the evidentiary rulings was erroneous, let alone prejudicial, the contention is forfeited.  (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 64.)

15

## DISPOSITION

The April 15, 2014 order denying Kennedy's special motion to strike and awarding the Morins $2,500 in attorney fees is affirmed.  The Morins' request for attorney fees on appeal is denied, this court having determined the appeal is not frivolous nor was it solely intended to cause unnecessary delay.  (§ 425.16, subd. (c)(1).)  The Morins shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

KITCHING, J.

JONES, J.*

---

*    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16