Filed 1/8/14  KSM Healthcare v. Always Best Case Management CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KSM HEALTHCARE, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ALWAYS BEST CASE MANAGEMENT, INC., et al., <br><br> Defendants and Appellants. | B246066 <br><br> (Los Angeles County <br> Super. Ct. No. EC058704) |

APPEAL from an order of the Superior Court of Los Angeles County.  William D. Stewart, Judge.  Affirmed.

Berman Berman Berman Schneider & Lowary, Mark Lowary and Howard Smith for Defendants and Appellants.

Arent Fox, Jonathan E. Cohn and Pamela Shu for Plaintiff and Respondent.

* * * * * *

Plaintiff and respondent KSM Healthcare, Inc., doing business as Dreier's Nursing Care Center (Dreier's) asserted causes of action for intentional interference with economic relationship and unfair business practices (Bus. & Prof. Code, § 17200 et seq.) against defendants and appellants Always Best Case Management, Inc. (ABCM) and Ann LeShay (LeShay). Appellants appeal from the trial court's order denying their special motion to strike brought pursuant to Code of Civil Procedure section 425.16.[1] We affirm. Appellants failed to meet their burden to show that Dreier's claims arose from protected activity within the meaning of section 425.16.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

*LeShay's Assessments.*

Dreier's was licensed and operated as a skilled nursing facility (SNF) in Glendale, and it engaged in the business of providing a nursing home and long-term care facility for the elderly. A residential care facility for the elderly (RCFE) provides a lower level of care than an SNF. Dreier's maintained a list of RCFE's it had vetted and can recommend to residents whose condition has improved to the point where a lower level of care is sufficient. In 2009, Dreier's added Audrey's Residential Care (Audrey's) to its RCFE list, and in 2012 it added Evergreen Chateau (Evergreen) to the list.

ABCM was engaged in the business of providing services related to the Medicaid Waiver Care Coordination for the Assisted Living Waiver (ALW) program in Los Angeles County and employed registered nurse LeShay as an evaluator to determine ALW program eligibility. The ALW program offered Medi-Cal eligible individuals the opportunity to receive services in a setting less restrictive than an SNF, such as an RCFE. LeShay had no authority to qualify individuals for ALW program eligibility; only the California Department of Health Care Services (DHCS) had that authority. Also, LeShay

---

[1]    Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[2]    The facts are taken from the evidence submitted in support of and in opposition to the special motion to strike. As we later discuss, many of these facts do not form the basis of Dreier's complaint.

2

did not have authority to visit an SNF without a resident's permission or to discharge a patient to another facility. ABCM maintained it received no compensation directly from an RCFE.

LeShay visited Dreier's twice, each time evaluating two patients for the ALW program. Over 90 percent of Dreier's residents are Medicare/Medicaid recipients. On February 5, 2009, she visited Dreier's to evaluate residents Dottie T. and Louis B., and obtained their consent for the evaluation. She asserted that according to the information she entered into the ALW assessment tool, both qualified for ALW program services. As part of her monitoring duties to an individual who has qualified for such services, she thereafter made several calls to Dreier's to inquire about whether Dottie T. and Louis B. had been transferred to Audrey's. According to LeShay, a social worker at Dreier's named "Connie" told her that the transfers were not being effected due to a "low census," which to LeShay meant that the discharge would negatively affect occupancy levels and operating capacity, and in turn profitability. Connie added that Dreier's was attempting to have Dottie T. declared incompetent so she could not be discharged.

On the basis of Connie's statements and LeShay's own observations of the residents, LeShay contacted Community Care Licensing (CCL) to advise them of her concerns. In 2009, agents from the Department of Justice investigated Dreier's following a complaint that Dottie T. and Louis B. were being held against their will and fraudulently billed for their care. Following the investigation, agents reported they found no evidence of wrongdoing and no evidence to support the complaint.

According to Dreier's, on March 10, 2009, Dottie T.'s physician recommended that she be involuntarily held pursuant to Welfare and Institutions Code section 5150 and she was discharged to Verdugo Hills Hospital where she would receive a higher level of care than that provided by Dreier's. Louis B.'s physician recommended he stay at Dreier's until he completed his exercise therapy administered by a restorative nurse assistant—a program that would not have been available to him at an RCFE. He was discharged to Audrey's in March 2009.

3

LeShay visited Dreier's again on May 3, 2012 to evaluate residents Marie B. and Phillip M. for ALW program eligibility. Only Marie B. was deemed eligible to receive ALW program services. According to Dreier's, at about that time it learned that Marie B.'s treatment authorization request, which governs the extent of a facility's billing Medi-Cal for her care, would discontinue her payment for SNF services in September 2012. To begin her discharge planning, it recommended Evergreen as a potential discharge location. Marie B. visited Evergreen before being evaluated by LeShay and, at the time of LeShay's evaluation, expressed an interest to LeShay in being transferred there.

According to LeShay, Evergreen's owner Joy Michalyuk told her that Dreier's had informed her it would not discharge Marie B. due to a "low census." According to Dreier's, by June 2012, however, Marie B. was no longer interested in Evergreen and wanted to stay at Dreier's. In early June 2012, Dreier's informed Evergreen of Marie B.'s change of heart, adding it had no physician's order requiring her transfer there. Marie B. then toured Leisure Vale on June 14, 2012 and decided she liked it; Dreier's coordinated with her physician the transfer to that facility.

In June 2012, LeShay contacted the Los Angeles County SNF Ombudsman, who instructed her to file a report with the Department of Public Health. In turn, LeShay complained to the Department of Public Health that Dreier's was holding onto patients. In July 2012, the Department of Public Health investigated the complaint, determining it to be unsubstantiated and finding no deficiencies.

### Complaint and Special Motion to Strike.

In June 2012, Dreier's sent LeShay a cease and desist letter, accusing her of making false and defamatory statement to the DHCS that Dreier's was holding residents against their will and fraudulently billing Medi-Cal for those individuals, and directing her to refrain from making any further defamatory statements.

Thereafter, in July 2012, Dreier's filed a complaint against Michalyuk, Evergreen, LeShay and ABCM, alleging causes of action for intentional interference with economic relationship and unfair competition in violation of Business and Professions Code

4

section 17200.  It alleged on information and belief that Evergreen collaborated with ABCM and LeShay to transfer individuals to Evergreen by fraudulently identifying them as eligible for ALW program funds, which resulted in Evergreen's improper receipt of those funds.  More specifically, Dreier's alleged "that LeShay toured Dreier's over the course of several years including during 2012, under the guise of looking for Dreier's patients to evaluate for the ALW program.  In actuality, LeShay was improperly soliciting residents and wrongfully determining them as ALW 'eligible' without any regard to the residents' actual qualifications for the ALW program, the residents' clinical condition, or whether a physician had actually cleared the resident for transfer to a different level of care.  LeShay would then approve these 'eligible' residents for transfer to Evergreen Chateau without first obtaining proper discharge orders."  It further alleged that ABCM and LeShay received monies for each Evergreen transfer.  Dreier's alleged it was damaged by this conduct because performance of the residents' admission agreements became more expensive and difficult; it had to incur costs to protect its interests and its residents' safety; and it lost revenue.  It sought damages, punitive damages and injunctive relief.

Appellants filed a special motion to strike, asserting that Dreier's claims arose from protected petitioning activity because they were based on LeShay's reports to a public agency, and further asserting, among other arguments, that appellants could not establish a probability of prevailing because those reports were privileged under Civil Code section 47, subdivision (b).  In support of the motion they offered LeShay's declaration, the declaration of ABCM program manager Mark Smith, and a copy of the State of California Assisted Living Waiver Care Coordination Agency Provider Handbook.  They also joined in Evergreen's and Michalyuk's special motion to strike, and vice-versa.[3]

---

[3]     Dreier's resolved its claims against Evergreen and Michalyuk after the denial of their special motion to strike.

Dreier's opposed the motion, arguing that LeShay's communications were not protected activity because they were made in bad faith and were not part of an "official proceeding," and that it was likely to prevail on the merits. It submitted the declaration of registered nurse Roxanne Wilson, who offered an expert opinion that neither Dotti T. nor Louis B. was an appropriate candidate for an RCFE. It also offered the declaration of Dreier's administrator, John Haedrich, who described Dreier's operations and averred that since 2007 it has maintained the highest rating offered by the Department of Public Health. He explained that Dreier's has no authority to hold onto patients, nor any financial incentive to do so. By the same token, Dreier's has no authority to discharge a patient and acts only upon the request of a patient or physician's orders. Dreier's also filed evidentiary objections to the declarations offered in support of the motion.

Following a November 2012 hearing, the trial court issued its ruling denying the motions. With respect to the first cause of action for intentional inference with economic relationship, the trial court reasoned that the complaint's allegations were not based on protected activity: "Instead, the Plaintiff's cause of action is based on allegations that Ann LeShay was engaged in a fraudulent scheme with the other Defendants to transfer residents to the facility of Evergreen Chateau. The Plaintiff alleges that Ms. LeShay would attempt to transfer residents without obtaining proper discharge orders or consent by the residents. This is not conduct that falls within any of the categories identified in CCP section 425.16(e)." With respect to the second cause of action for unfair business practices, the trial court rejected appellants' argument that the claim was based on petitioning activity in the form of LeShay's complaints to government agencies. It observed that "[t]here are no allegations whatsoever indicating that the Plaintiff's causes of action are based on these reports," and concluded that appellants failed to show Dreier's cause of action arose from protected activity merely because it was filed after the defendant engaged in such activity. The trial court overruled the evidentiary objections to LeShay's declaration, and sustained in part and overruled in part the objections to the other declarations.

This appeal followed.

6

**DISCUSSION**

Appellants contend the trial court erred in concluding they failed to meet their threshold burden to show that Dreier's claims arose from protected activity. They argue that LeShay's comments and related conduct involved petitioning activity designed to prompt action by a public agency. We agree with the trial court that the conduct forming the basis for Dreier's causes of action did not fall within the scope of section 425.16.

**I.      The Anti-SLAPP Statute and the Standard of Review.**

A special motion to strike under section 425.16 permits a defendant to obtain an early dismissal of an action that qualifies as a "SLAPP," or "'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.) The anti-SLAPP statute is designed to curb "'lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' [Citations.]" (*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1305.)

In relevant part, the statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The statute defines an act "'in furtherance of'" the right of petition or free speech to include "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" or "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law[.]" (§ 425.16, subd. (e)(1)-(2).)

"'"[S]ection 425.16 requires that a court engage in a two-step process when determining whether a defendant's anti-SLAPP motion should be granted. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity. [Citation.] If the court finds such

7

a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.'" [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' [Citation.] Thus, if the defendant fails to satisfy the first step, the court need not address the second step, and must deny the special motion to strike." (*Aguilar v. Goldstein* (2012) 207 Cal.App.4th 1152, 1159.)

We independently review the denial of a special motion to strike. (*Aguilar v. Goldstein, supra,* 207 Cal.App.4th at p. 1159; *City of Alhambra v. D'Ausilio, supra,* 193 Cal.App.4th at p. 1306; *Guessous v. Chrome Hearts, LLC* (2009) 179 Cal.App.4th 1177, 1183.) "We consider 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' [Citations.]" (*Guessous v. Chrome Hearts, LLC, supra,* at pp. 1183–1184.) "We do not weigh the evidence; rather, we accept as true evidence favorable to [the plaintiff], and evaluate evidence favorable to the moving parties, to determine whether as a matter of law, it defeats [the plaintiff's] evidence. [Citations.]" (*Chodos v. Cole* (2012) 210 Cal.App.4th 692, 698–699; accord, *Bailey v. Brewer* (2011) 197 Cal.App.4th 781, 788.)

## II. Appellants Failed to Meet Their Burden to Show Dreier's Claims Arose from Protected Activity.

"[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.]" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) Stated another way, "it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-

8

SLAPP statute." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188.) "We assess the principal thrust by identifying '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' [Citation.] If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute. [Citation.]" (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272; accord, *Renewable Resources Coalition, Inc. v. Pebble Mines Corp.* (2013) 218 Cal.App.4th 384, 396 ["the 'gravamen is defined by the *acts on which liability is based*'"].)

The "'arising from' requirement is not always easily met." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66.) Here, the trial court properly determined that neither of Dreier's causes of action arose from protected activity. As the trial court acknowledged, Dreier's first cause of action for intentional interference with economic relationship was based on allegations that LeShay toured Dreier's under the guise of looking for residents to evaluate for the ALW program when she was actually improperly soliciting residents and deeming them "eligible" without regard to the ALW program qualifications. Dreier's further alleged that LeShay would approve such residents for transfer to Evergreen without obtaining proper discharge orders in order to divert residents to Evergreen, interfere with Dreier's contractual arrangement with its residents and gain an unfair business advantage over Dreier's. Thus, the principal thrust or gravamen of the claim was premised on LeShay's alleged wrongful attempt to transfer residents from Dreier's to Evergreen. Such conduct does not fall within the scope of section 425.16, as it involved neither a statement in an official proceeding nor a statement in connection with an issue under review by a governmental body. (§ 425.16, subd. (e).)

In its second cause of action for unfair competition and unfair business practices in violation of Business and Professions Code section 17200 et seq., Dreier's similarly alleged that appellants engaged in a fraudulent transfer scheme for the purpose of interfering with and disrupting Dreier's business and to enable Evergreen to gain an economic advantage over Dreier's. As with Dreier's first cause of action, the trial court

9

properly determined "[t]here are no allegations of conduct that falls within any of the categories identified in [section 425.16, subd. (e)]." (See *City of Alhambra v. D'Ausilio, supra,* 193 Cal.App.4th at pp. 1308–1309 [anti-SLAPP statute does not apply where protected activity is not the basis of the controversy].)

Relying on information provided in the evidence offered both in support of and in opposition to the anti-SLAPP motion, appellants argue that Dreier's claims arose from protected activity. They emphasize evidence that LeShay made two complaints about Dreier's to the DHCS and/or Department of Public Health that resulted in governmental investigations, the content of Dreier's cease and desist letter referencing LeShay's complaints, and DHCS involvement in determining ALW program eligibility, and argue that such statements and related conduct constituted protected petitioning activity within the meaning of the anti-SLAPP statute. Preliminarily, we note that the complaint contains no allegations concerning LeShay's reports to the DHCS or the Department of Public Health or the consequent investigations. As explained in *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at page 66, "the mere fact an action was filed after protected activity took place does not mean it arose from that activity. [Citation.] Rather, '"the act underlying the plaintiff's cause" or "the act which forms the basis for the plaintiff's cause of action" must *itself* have been an act in furtherance of the right of petition or free speech.' [Citation.]" Here, given the complete absence of any allegations of liability or claim for damages on the basis of LeShay's DHCS and Department of Public Health complaints, we cannot conclude that evidence of those complaints satisfied appellants' burden to show that Dreier's claims were based on protected activity. As aptly noted in *Episcopal Church Cases* (2009) 45 Cal.4th 467, 478: "The additional fact that protected activity may lurk in the background—and may explain why the rift between the parties arose in the first place—does not transform a property dispute into a SLAPP suit."

Dreier's complaint contains references to the ALW program qualification process. But Dreier's cites the process merely as evidence of appellants' scheme to divert residents from it to Evergreen. Acknowledging the distinction between a plaintiff's

10

theory of liability and the evidentiary facts that may or may not support that theory, courts have routinely rejected efforts to confuse "allegedly *wrongful acts* with the *evidence* that plaintiff will need to prove such misconduct." (*Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1399 [reversing grant of anti-SLAPP motion where the plaintiff alleged the defendant insurer engaged in claims mishandling and finding insurer's communication to the Department of Insurance was evidence of such misconduct and not the gravamen of the plaintiff's complaint]; see also *Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 795, 809 [reversing grant of anti-SLAPP motion striking breach of contract and tort claims stemming from sale of real property where the principal thrust of the complaint challenged the manner in which the parties dealt with each other privately and the collateral activity of obtaining governmental approvals was merely evidence of that conduct]; *Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 417 [affirming denial of anti-SLAPP motion where the gravamen of the plaintiff's complaint was that the defendant produced a product that did not meet its warrantied or represented characteristics, and the defendant's advertising was merely evidence of and incidental to the manufacturing and sales conduct forming the basis of the complaint].)

We reject appellants' efforts to confound Dreier's allegations of wrongdoing with evidence pertinent to one step in appellants' allegedly fraudulent scheme. As the court in *Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1214–1215, observed, "[i]n deciding whether an action is a SLAPP, the trial court should distinguish between (1) speech or petitioning activity that is mere *evidence* related to liability and (2) liability that is *based on* speech or petitioning activity." Here, while the ALW program evaluation process assists in "telling the story" of LeShay's alleged efforts to divert residents from Dreier's, the claims against appellants are not based on any communications made to a governmental entity or in an official proceeding.[4] (*Id.* at

_____

[4] We note that the parties offered no evidence to show that, beyond creating the ALW assessment tool, the DHCS had any involvement in LeShay's assessments of the

11

p. 1215.) Instead, Dreier's claims are based on appellants' alleged wrongful scheme to induce residents to leave Dreier's and move to Evergreen. Allegations concerning the ALW program assessment are nothing more than "[i]ncidental allegations regarding protected activity [that] do not 'subject the cause[s] of action to the anti-SLAPP statute.' [Citation.]" (*PrediWave Corp. v. Simpson, Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1220.)

Accordingly, we conclude appellants failed to meet their threshold burden of establishing that Dreier's claims arose from protected activity, and the trial court properly denied appellants' anti-SLAPP motion. In view of our conclusion, we need not address whether Dreier's demonstrated a probability of prevailing on the merits of its claims.[5] (See *City of Cotati v. Cashman, supra,* 29 Cal.4th at pp. 80–81; *Wang v. Wal-Mart Real Estate Business Trust, supra,* 153 Cal.App.4th at p. 811.)

---

individual residents. Thus, appellants' reliance on *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1009, is misplaced, as the evidence there showed the defendants' filing a complaint with the Securities and Exchange Commission fell within the anti-SLAPP statute because such conduct amounted to """communication to an official administrative agency . . . designed to prompt action by that agency . . . .""""

[5] Nor need we address appellants' contention the trial court erroneously denied the motion because it determined that appellants' allegedly fraudulent conduct was illegal as a matter of law. (See *Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, 704 [Code Civ. Proc., § 425.16 "does not protect activity that, because it is illegal, is not in furtherance of constitutionally protected speech or petition rights"].) Though there was some reference to the illegality doctrine at the hearing on the motion to strike, the trial court did not rely on illegality in its written order. In any event, we agree with appellants there was no showing that their conduct was illegal as a matter of law; nor did they concede illegality. (See *Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 712 ["An activity may be deemed unlawful as a matter of law when the defendant does not dispute that the activity was unlawful, or uncontroverted evidence conclusively shows the activity was unlawful"].)

12

## DISPOSITION

The order denying appellant's special motion to strike is affirmed.  Dreier's is entitled to its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J. *

FERNS

We concur:

_____, Acting P. J.

ASHMANN-GERST

_____, J.

CHAVEZ

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13