Filed 11/20/14  Heebner v. Prappas CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JACQUELYN A. HEEBNER, as Trustee, etc., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> WILLIAM PRAPPAS, <br><br> Defendant and Appellant. | B248851 <br> (Los Angeles County <br> Super. Ct. No. BC492111) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael I. Levanas, Judge.  Affirmed.

William Prappas, in pro. per., for Defendant and Appellant.

Goodstein & Berman, Gary J. Goodstein and Bruce A. Berman, for Plaintiffs and Respondents.

_____

In the underlying action, respondents Jacquelyn A. Heebner, trustee of the Roger Williams Trust, and Virtuoso, Inc. (Virtuoso) assert claims against appellant William Prappas for violations of a tax preparer's statutory duties. On appeal, Prappas challenges the trial court's denial of his motion under Code of Civil Procedure section 425.16 -- the law designed to curtail the filing of strategic lawsuits against public participation, often called the "anti-SLAPP law." We affirm.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Virtuoso is a closely held corporation established by Roger Williams, the well known pianist and performer. In 1996, Williams also created a personal trust, which was later amended and restated. For several years, Prappas acted as business manager for Williams and Virtuoso. In October 2011, Williams died.

In February 2012, Williams' daughter, Alice Williams Jung, initiated a probate action to invalidate certain testamentary instruments attributed to Williams, and remove Heebner as trustee of Williams's trust (L.A.S.C. Case No. BP 133277). Jung's petition alleged that several instruments executed by Williams, including amendments to the trust naming Heebner as trustee, were the product of "fraud, menace, forgery, duress [and] undue influence" by Heebner. Jung's petition sought the appointment of Prappas as trustee of the trust.

On March 9, 2012, Heebner filed a probate action in her alleged capacity as the trustee of Williams's trust (L.A.S.C. Case No. BP 133540). Her petition asserted that Williams and Virtuoso had assigned certain items of property to the trust, including business and tax records; that Prappas possessed some or all the property; and that Prappas failed to return the property when Heebner asked for it. Heebner requested a determination that the property belonged to the trust, and an order directing Prappas to return the property.

2

On March 16, 2012, Jung filed an action for damages against Heebner and several other parties, asserting a cause of action for elder abuse and related claims (L.A.S.C. Case No. BC 481134).[1] Jung's complaint alleged that in 2011, when Williams underwent debilitating treatment for pancreatic cancer, Heebner improperly arranged for him to execute testamentary instruments favorable to her, and engaged in other misconduct.

In April 2012, the probate court judge consolidated the two probate actions. Later, in July 2012, Jung's action for damages was declared related to the two probate actions, and all three actions were assigned to a single probate court judge (Judge Michael Levanas).

On September 14, 2012, respondents initiated the underlying action against Prappas (L.A.S.C. Case No. BC 492111).[2] The complaint alleges that prior to Williams's death, he and Virtuoso paid Prappas to prepare and file tax returns for them. The complaint contains claims for unfair business practices and violations of the duties imposed on tax preparers (Bus. & Prof. Code, §§ 17200, 22250 et seq.).[3]

Prappas filed a motion under the anti-SLAPP law to strike respondents' complaint. In addition, he demurred to the complaint, contending that it stated no cause of action, and that respondents' action should be abated due to the three prior

---

[1]    Jung's complaint also contained claims for willful misconduct, negligence, negligent misrepresentation, fraud, conversion, breach of fiduciary duty, conspiracy to defraud, infliction of emotional distress, wrongful death, recovery on common counts, and imposition of a constructive trust.

[2]    The claims in the complaint are asserted against Prappas individually and as doing business as The Prappas Company.

[3]    All further statutory citations are to the Business and Professions Code, unless otherwise indicated.

3

actions. In January 2013, the underlying action was declared related to those actions and assigned to the probate court responsible for them.

On March 20, 2013, the probate court judge denied the anti-SLAPP motion, and determined that respondents were entitled to an award of attorney fees. In addition, the judge overruled Prappas's demurrer to the complaint. Later, the judge denied Prappas's motion for reconsideration of those rulings. This appeal followed.[4]

## DISCUSSION

Prappas contends the probate court judge erred in denying his anti-SLAPP motion and issuing an award of attorney fees to respondents. For the reasons discussed below, we disagree.

### A. *Anti-SLAPP Motions*

Under section 425.16 of the Code of Civil Procedure, "[w]hen a lawsuit arises out of the exercise of free speech or petition, a defendant may move to strike the complaint. [Citations.] The complaint is subject to dismissal unless the plaintiff establishes 'a probability that [he or she] will prevail on the claim.' [Citations.]" (*Beilenson v. Superior Court* (1996) 44 Cal.App.4th 944, 949, quoting Code Civ. Proc., § 425.16, subd. (b).) The anti-SLAPP law encompasses actions arising from conduct "in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech," including written and oral statements "before a . . . judicial proceeding" or "in connection with an issue

---

[4] Prappas noticed the appeal, inter alia, from the denial of his anti-SLAPP motion and demurrer. On August 8, 2013, this court dismissed the appeal to the extent Prappas challenged the denial of his demurrer, which is not an appealable order. (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 912-913.)

under consideration or review by . . . a judicial body." (Code Civ. Proc., § 425.16, subd. (e)(1).) Under the anti-SLAPP law, oral and written statements that are "intimately intertwined with, and preparatory to, the filing of judicial proceedings" may constitute protected activity. (*Cabral v. Martin* (2009) 177 Cal.App.4th 471, 482.)

Resolution of an anti-SLAPP motion "requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) When an anti-SLAPP motion attacks several claims within a complaint, this process is properly applied to individual claims. (*Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 106-110; *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929-935; *Shekhter v. Financial Indemnity Co.* (2001) 89 Cal.App.4th 141, 150 (*Shekhter*).)

"'The defendant has the burden on the first issue, the threshold issue; the plaintiff has the burden on the second issue. [Citation.]'. . . In terms of the so-called threshold issue, the moving defendant's burden is to show the challenged cause of action 'arises' from protected activity. [Citations.] Once it is demonstrated the cause of action arises from the exercise of the defendant's free expression or petition rights, then the burden shifts to the plaintiff to show a probability of prevailing in the litigation. . . . [T]he trial court, in making its determination, considers the pleadings and affidavits stating the facts upon which the liability or defense is based. [Citations]." (*Shekhter*, *supra*, 89 Cal.App.4th at p. 151, italics omitted.) We review the trial court's determinations regarding those

5

matters de novo. (*Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456.)

Under the anti-SLAPP statute, the trial court must award reasonable attorney fees to a prevailing plaintiff pursuant to Code of Civil Procedure section 128.5, when it determines that a defendant's anti-SLAPP motion was "frivolous or . . . solely intended to cause unnecessary delay" (Code Civ. Proc., § 425.16, subd. (c)(1)). (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 450.) An award of attorney fees to a prevailing defendant is reviewed for an abuse of discretion. (*Ibid*.)

Our review is governed by a fundamental principle of appellate procedure, namely, that "'[a] judgment or order of the lower court is presumed correct,'" and thus, "'error must be affirmatively shown.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564, italics omitted, quoting 3 Witkin, Cal. Procedures (1954) Appeal, § 79, pp. 2238-2239.) Under this principle, Prappas bears the burden of establishing error on appeal by means of argument and citation to authority. (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 684-685 (*Paulus*); *Schoendorf v. U.D. Registry, Inc.* (2002) 97 Cal.App.4th 227, 237 (*Schoendorf*).) Our review is thus limited to contentions adequately raised in Prappas's briefs. (*Schoendorf*, *supra*, 97 Cal.App.4th at p. 237.)

B. *Underlying Proceedings*

Respondents' complaint, filed September 14, 2012, contains ten claims for breach of a tax preparer's duties (§§ 22250, 22252, 22252.1, 22253, 22255), and a claim for unfair business practices (§ 17200). In support of those claims, the complaint alleges that prior to Williams's death, he and Virtuoso paid Prappas to prepare and file tax returns for them, but Prappas failed to comply with certain statutory duties imposed on tax preparers. The complaint further alleges that after

6

Williams's death, Prappas violated other statutory duties when he refused to return tax records to Heebner, and instead gave them to his attorney, James Armstrong, who also represents Jung in the three prior actions regarding Williams and his estate. According to the complaint, attorney Armstrong disclosed the tax records to Jung, and used them in those actions. The complaint sought restitution, disgorgement of profits, statutory fines, and an award of attorney fees; in addition, it maintained that Prappas's misconduct constituted misdemeanors (§ 22256).

As we elaborate below (see pt. C.1., *post*), five of the complaint's claims are predicated primarily on allegations that Prappas violated a tax preparer's duties when he prepared and filed Williams's and Virtuoso's tax returns. Of the remaining claims, five rely -- at least in part -- on allegations that Prappas contravened a tax preparer's duties after Williams's death: two claims assert that Prappas failed to return respondents' tax records when Heebner requested them, and three claims assert that Prappas improperly disclosed the records to third parties. The remaining claim under the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.) is predicated on the unlawful conduct alleged in the other claims, and seeks disgorgement of Prappas's profits.

Upon filing the complaint, respondents submitted a notice identifying their action as related to the three prior actions regarding Williams and his estate. In response to that notice, the trial judge assigned to the action referred it to another court for a determination whether the action should be reassigned to the probate court judge responsible for the three prior actions.

On November 21, 2012, while that determination was pending, Prappas filed his anti-SLAPP motion. Prappas contended that respondents' claims arose from his protected activities, arguing that the claims had "a direct and obvious 'connection' with a judicial proceeding"-- namely, the three prior actions regarding Williams and his estate -- and that respondents' complaint was "nothing more than

7

a ruse and guise to somehow circumvent, divert, and thwart" those actions. Prappas requested judicial notice of the entire case files and pleadings in the prior actions. Additionally, Prappas asserted that respondents' claims were "factually and materially deficient."

On January 16, 2013, respondents filed their opposition to the anti-SLAPP motion.[5] On the same date, Prappas submitted what he characterized as a reply to respondents' "non-opposition" to the anti-SLAPP motion, arguing that respondents had failed to file and serve a timely opposition. In support of that contention, the reply relied on a declaration from attorney Armstrong. The reply also requested that the court take judicial notice of the case files in the three prior actions.

The following day, January 17, 2013, respondents' action was determined to be related to the three prior actions, and was assigned to the probate court responsible for them. Later, the probate court set a hearing regarding the anti-SLAPP motion, and permitted Prappas to file a reply to respondents' opposition.

Prappas's supplemental reply, filed February 7, 2013, again maintained that respondents had failed to file and serve their opposition in a timely manner, relying on a declaration from Armstrong. In addition, Prappas requested judicial notice of the case files in the prior three actions, as well as all the filings in the underlying action. Prior to the hearing on the anti-SLAPP motion, respondents objected to Prappas's requests for judicial notice and portions of Armstrong's declarations.

---

[5] Respondents opposed the motion on three grounds. First, they maintained that their claims did not implicate Prappas's free speech or petition rights. Second, they argued that the misconduct alleged in the complaint was not protected activity under the exception stated in *Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 (*Flatley*) for conduct that is "illegal as a matter of law." Third, they contended that even if the claims arose from protected activity, there was a reasonable probability that they would prevail on the merits.

8

On March 20, 2013, following a hearing, the probate court denied the anti-SLAPP motion. In ruling, the court rejected Prappas's requests for judicial notice, and sustained all but one of respondents' objections to Armstrong's declarations. The court determined that only three claims in respondents' complaint "likely" arose from "arguably" protected activity, and that respondents had established their likelihood of prevailing with respect to those claims, which relied on allegations that Prappas improperly disclosed Williams's and Virtuoso's tax records. The court further concluded that respondents were entitled to an award of attorney fees, stating that Prappas's anti-SLAPP motion "was poorly drafted, poorly organized[,] and overwhelmingly without merit . . . ."

C. *Analysis*

In assessing the trial court's rulings, our focus is on the ten claims alleging violations of a tax preparer's duties, as the unfair business practices claim relies entirely on the purported unlawful activity identified in those claims.[6] In denying the anti-SLAPP motion, the probate court effectively segregated the ten claims into two groups on the basis of whether they alleged an unlawful disclosure of confidential information. The court concluded that the seven claims lacking such allegations (the disclosure-independent claims) implicated no protective activity, and that as to the three remaining disclosure-related claims, respondents had made an adequate showing of prevailing on the merits. As explained below, we discern no error in those determinations.

---

[6] Generally, the UCL defines "unfair competition" broadly to include "any unlawful, unfair or fraudulent business act or practice . . . ." (Bus. & Prof. Code, § 17200.) Under the UCL, damages cannot be recovered, and plaintiffs are generally limited to injunctive relief and restitution. (*Clark v. Superior Court* (2010) 50 Cal.4th 605, 610.)

9

### 1. *Disclosure-Independent Claims*

We begin with the disclosure-independent claims. In determining whether they "arise[] from protected activity" (Code Civ. Proc., § 425.16, subd. (b)), we examine "the principal thrust or gravamen of the causes of action, i.e., the allegedly wrongful and injury-producing conduct that provides the foundation for the claims. [Citations.] We review the parties' pleadings, declarations, and other supporting documents at this stage of the analysis only 'to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.'" (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 490-491, quoting *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1389 (*Coretronic*).)

None of the seven disclosure-independent claims is predicated on protected activity. Five of those claims rely principally on allegations of Prappas's misconduct as a tax preparer before Williams's death, when he prepared and filed Williams's and Virtuoso's tax returns. Those claims assert that Prappas failed to secure a bond (first cause of action; § 22250, subd. (e)(1)), failed to provide proof of a bond (second cause of action; § 22252), failed to register as a tax preparer (fourth cause of action; § 22253, subd. (a)(1)), failed to maintain copies of filed tax returns (sixth cause of action; § 22253, subd. (a)(5), and failed to fulfill continuing education requirements (tenth cause of action; § 22255, subd. (b)).[7] As the

---

[7] Subdivision (e)(1) of section 22250 states: "A tax preparer may not conduct business without having a current surety bond in the amount prescribed by this section."

Section 22252 states: "Prior to rendering any tax preparation services, a tax preparer shall provide the customer in writing with the tax preparer's name, address, telephone number, and evidence of compliance with the bonding requirement of Section 22250, including the bond number, if any."

Subdivision (a) of section 22253 states: "It is a violation of this chapter for a tax preparer to do or commit . . . any of the following: [¶] (1) Fail to register as a tax preparer with the council. [¶] . . . [¶] (5) Fail to maintain a copy of any tax return prepared for a

*(Fn. continued on next page.)*

10

principal alleged misconduct predates Williams's death and relates to Prappas's conduct in preparing and filing Williams's and Virtuoso's tax returns, it cannot be regarded as implicating Prappas's free speech or petition rights. (See *Beach v. Harco National Ins. Co.* (2003) 110 Cal.App.4th 82, 92 [insured's cause of action against insurer for bad faith in adjusting insured's claim for policy benefits did not arise from protected activity by insurer].)

The remaining two disclosure-independent claims also do not arise from protected activity, even though they allege misconduct contemporaneous with the prior three actions. These claims assert that Prappas failed to return respondents' tax records, even when Heebner asked for them, both before and during the three prior actions (fifth and ninth causes of action; § 22253, subds. (a)(4), (a)(10)).[8] As explained below, the gravamen of the claims is the recovery of property, rather than any protected activity.

In *Episcopal Church Cases* (2009) 45 Cal.4th 467, 474-476, a local church fell into a doctrinal disagreement with its national church and disaffiliated itself from that church, resulting in a property dispute regarding the local church's building. When the national church and its regional representative sued the local church to recover the building, the local church filed an anti-SLAPP motion,

customer for four years from the date of completion or the due date of the return, whichever is later."

Subdivision (b) of section 22255 states: "A tax preparer shall complete on an annual basis not less than 20 hours of continuing education, including 15 hours in federal taxation and 5 hours in California taxation from an approved curriculum provider."

[8] Subdivision (a) of section 22253 states: "It is a violation of this chapter for a tax preparer to do or commit . . . any of the following: [¶] . . . [¶] (4) Fail or refuse to give a customer, for his or her own records, a copy of any document requiring the customer's signature, within a reasonable time after the customer signs the document. [¶] . . . [¶] (10) Fail to return, upon the demand by or on behalf of a customer, records or other data provided to the tax preparer by the customer."

arguing that the suit arose from protected activity, namely, its right to assert a specific religious doctrine. (*Id.* at pp. 476-477.) Our Supreme Court rejected that contention, stating: "In filing this action, [the national church] sought to resolve a *property dispute.* The property dispute is based on the fact that both sides claim ownership of the same property. This dispute, and not any protected activity, is 'the gravamen or principal thrust' of the action. [Citation.] The additional fact that protected activity may lurk in the background . . . does not transform a property dispute into a SLAPP suit." (*Id.* at pp. 477-478, quoting *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 193.) The same is true here regarding the two claims in question.

Prappas contends that respondents' claims necessarily arise from protected activity because the underlying action was determined to be related to the three prior actions regarding Williams and his estate. He maintains that the circumstances in the underlying action present "a classical example of why and when [an anti-SLAPP] motion should be granted," arguing that all four actions "arise out of," and involve, the same parties, facts, witnesses, and evidence. We reject his contention, as it relies on a false premise, namely, that the determination that an action is related to prior litigation establishes that the claims in the action arise from activity protected under the anti-SLAPP law.

Under the rules of court, as applicable here, actions may be declared related and assigned to a single judge when they involve claims or issues based on the same transactions, incidents, or events.[9] The goals of those rules are "to promote

[9] Rule 3.300(a) of the California Rules of Court states: "A pending civil case is related to another pending civil case, or to a civil case that was dismissed with or without prejudice, or to a civil case that was disposed of by judgment, if the cases: [¶] (1) Involve the same parties and are based on the same or similar claims; [¶] (2) Arise from the same or substantially identical transactions, incidents, or events requiring the determination of
*(Fn. continued on next page.)*

judicial efficiency and to prevent plaintiffs from 'judge shopping' (dismissing a case without prejudice and refiling in the hope of being assigned to a different judge)." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014) ¶ 12:38, p. 12(I)-9.)

The mere fact that an action involves claims and circumstances directly related to prior litigation does not establish that the action arises from protected activity, for purposes of the anti-SLAPP law. In *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 72 (*Cotati*), a city enacted a rent stabilization program applicable to a mobilehome park. In response, the park owners initiated an action for declaratory relief in federal court, seeking a declaration that the program was an impermissible regulatory taking under the United States Constitution. (*Cotati, supra,* at p. 72.) Later, after the city commenced an action in state court for a declaration that the program was *not* an impermissible taking, the park owners filed an anti-SLAPP motion, arguing that the state court action necessarily arose from protected activity, namely, the park owners' federal court action. (*Cotati,* at p. 77.)

In rejecting that contention, our Supreme Court concluded that under the anti-SLAPP statute, "the mere fact that an action was filed after protected activity took place does not mean it arose from that activity." (*Cotati*, *supra*, 29 Cal.4th at p. 76.) Thus, "a responsive but independent lawsuit" based on the same

---

the same or substantially identical questions of law or fact; [¶] (3) Involve claims against, title to, possession of, or damages to the same property; or [¶] (4) Are likely for other reasons to require substantial duplication of judicial resources if heard by different judges."

Rule 3.300(h)(1) of the California Rules of Court provides that "[i]f all the related cases have been filed in one superior court, the court, on notice to all parties, may order that the cases . . . be related and may assign them to a single judge or department."

13

transaction or occurrence as a prior lawsuit does not necessarily arise from protected activity, even when the responsive lawsuit was triggered by the prior lawsuit, or amounted to "an oppressive litigation tactic." (*Id*. at p. 78.) Rather, "the statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*Ibid*.) Applying that test to the facts before it, the court concluded that the city's action did not arise from protected activity, that is, the park owners' federal action, but from the same dispute underlying the federal action. (*Id.* at pp. 79-81.)

Here, the seven disclosure-independent claims do not arise from the three prior actions regarding Williams and his estate, even though respondents' complaint mentions that litigation. A claim falls outside the scope of the anti-SLAPP law when its gravamen concerns unprotected activity, notwithstanding incidental references in the complaint to protected activity. (*Coretronic*, *supra*, 192 Cal.App.4th at p. 1398.) "Where the defendant's protected activity will only be used as evidence in the plaintiff's case, and none of the claims are based on it, the protected activity is only incidental to the claims. [Citation.] Determining the gravamen of the claims requires examination of the specific acts of alleged wrongdoing and not just the form of the plaintiff's causes of action. [Citation.]" (*Id*. at pp. 1388-1389.)

Under this standard, the gravamen of a claim may involve only unprotected activity, even though the alleged misconduct took place during litigation. In *Coretronic*, a law firm represented a television manufacturer during litigation with a third party. (*Coretronic, supra,* 192 Cal.App.4th at pp. 1384, 1387-1388.) While doing so, the law firm also undertook the representation of the third party in an unrelated action. (*Ibid*.) When the manufacturer commenced an action for fraud and breach of fiduciary duty against the law firm based on its failure to disclose the

14

concurrent representation, the law firm filed an anti-SLAPP motion, which the trial court denied. (*Coretronic, supra,* 192 Cal.App.4th at p. 1387.) In affirming that ruling, the appellate court concluded that the manufacturer's claims fell beyond the scope of the anti-SLAPP law, even though the alleged misconduct occurred while the attorneys represented the manufacturer against the third party. (*Coretronic, supra,* at p. 1391.)

We conclude that the allegations regarding the three prior actions in respondents' complaint are incidental to the misconduct underlying the seven disclosure-independent claims. Regarding those claims, the complaint asserts that after Williams's death, Heebner as trustee asked Prappas to return Williams's and Virtuoso's tax records, but he did not do so; that the three actions were filed, including Heebner's probate action to recover the trust property; and that in the course of that litigation, Prappas admitted that he had not returned the tax records. Because the references to the three prior actions state nothing more than evidence of the circumstances surrounding Prappas's failure to return the records, they are incidental to the seven disclosure-independent claims. In sum, the probate court correctly determined that the disclosure-independent claims -- the first, second, fourth, fifth, sixth, ninth, and tenth causes of action -- do not arise from protected activity.[10]

---

[10]  Prappas suggests that Heebner lacks standing to assert some or all of the disclosure-independent claims. However, "[a]rguments about the merits of the claims are irrelevant to the first step of the anti-SLAPP analysis." (*Coretronic*, *supra*, 192 Cal.App.4th at p. 1388.)

During oral argument, Prappas also argued that all of respondents' claims arise from protected activity because the complaint refers to his deposition testimony in the prior three actions, which he maintained is subject to the litigation privilege (Civ. Code, § 47). Prappas has forfeited this contention for want of argument in his briefs on appeal. Nonetheless, we would reject it were we to consider it. The complaint alleges only that during the deposition, Prappas admitted some of the misconduct alleged in the complaint,
*(Fn. continued on next page.)*

15

## 2. *Disclosure-Related Claims*

We turn to the three remaining claims, which assert that Prappas improperly disclosed tax records (third, seventh and eighth causes of action; §§ 22252.1, subd. (a), 22253, subds. (a)(7), (a)(8)).[11] The three claims allege that Prappas breached his duties as a paid tax preparer by divulging Williams's and Virtuoso's tax information to Armstrong, who communicated it to Jung for use in the three prior actions. The probate court concluded that although the claims "likely" arose from "arguably" protected activity, respondents demonstrated their likelihood of prevailing on the merits. It is unnecessary for us to assess whether the three disclosure-related claims arose from protected activity, as respondents established that they were likely to prevail on the merits of those claims.[12]

---

namely, that he refused to return Williams's and Virtuoso's tax records to respondents, and instead gave those records to Armstrong. Because the complaint identifies Prappas's testimony as *evidence* of Prappas's alleged wrongful conduct, rather than as the wrongful conduct itself, the complaint's reference to Prappas's deposition does not establish that respondents' claims arise from protected activity. (*Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1287-1288 & fn. 23.)

[11] Subdivision (a) of section 22252.1 provides that absent enumerated circumstances, "[n]o confidential information obtained by a tax preparer, in his or her professional capacity, concerning a client or a prospective client shall be disclosed by the tax preparer without the written permission of the client or prospective client."

Subdivisions (a)(7), (a)(8) of section 22253 provides that tax preparers may not violate specified state and federal statutes prohibiting the disclosure of tax information (Bus. & Prof. Code, § 17530.5; 26 U.S.C.A. § 7216).

[12] Relying on the statute establishing that a violation of a tax preparer's duties constitutes a misdemeanor (§ 22256), respondents argue that the wrongful activity alleged in the three claims is not protected because it is "illegal as a matter of law" (*Flatley*, *supra*, 39 Cal.4th at p. 320). In *Flatley*, our Supreme Court held that a defendant's anti-SLAPP motion fails when "the defendant *concedes*, or the evidence *conclusively establishes*, that the assertedly protected speech or petition activity was illegal as a matter of law." (*Id*. at p. 320, italics added.) It is unnecessary for us to
*(Fn. continued on next page.)*

16

In attempting to demonstrate a probability of prevailing regarding the three disclosure-related claims, respondents' burden resembled that imposed on a plaintiff opposing a motion for summary judgment on his or her complaint. (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 768.) Respondents were obliged to establish that their claims were "both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by [respondents] is credited." (*Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 548.) However, "the required showing . . . is 'not high.' [Citation.] . . . [P]laintiff needs to show only a 'minimum level of legal sufficiency and triability.' [Citation.]" (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 989.) In determining whether respondents carried this burden, the trial court was required to consider the pleadings and their supporting affidavits, to the extent these contained admissible evidence. (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.) The trial court was also obliged to consider admissible evidence that Prappas submitted in support of the motion, but only to determine whether it defeated respondents' showing as a matter of law. (*Ibid.*)

Respondents carried their burden. They submitted a declaration from Heebner, who stated that for three and a half years prior to Williams's death, she acted as his personal secretary and assistant. According to Heebner, during that period, Williams employed Prappas as his business manager. Prappas's responsibilities included "accounting and tax services," and the maintenance of "all of the business records generated through his services . . . ." Heebner further stated that after Williams died, she became trustee of his trust. Accompanying Heebner's declaration was a copy of the document entitled "Third Amendment to

determine whether those demanding standards are satisfied here, as we conclude that the probate court's ruling is properly affirmed on other grounds.

17

Amendment and Restatement of the Roger Williams Trust," which named Heebner as trustee upon Williams's death.

Respondents also submitted excerpts from deposition testimony taken in the three prior actions. Prappas testified that he had several clients, including Williams and two of his children. Prappas acted as Williams's business manager from 1990 to 2011, when Williams died. At some point during that period, when Williams's tax preparer retired or was let go, Prappas took on "the tax preparation role" for Williams. Prappas stated that he held no professional licenses or certificates, and had no formal training or degrees regarding business or accounting. According to Prappas, in October 2011, when attorney Armstrong asked for Prappas's records regarding Williams, Prappas gave them to Armstrong.

Jung testified that Armstrong represented both Prappas and herself in the three prior actions, and that she obtained checks written by Williams from "[her] lawyer." In addition, Williams's daughter, Laura Williams Fisher, testified that after Williams died, she asked Jung how she had secured canceled checks signed by Williams. According to Fisher, Jung replied that she "got the records from . . . Prappas."

Respondents thus made an adequate prima facie showing of Heebner's standing to assert the disclosure-related claims on behalf of the trust and Virtuoso. Heebner's declaration established that as trustee of Williams's trust, she was entitled to assert that Prappas had wrongfully disclosed tax information belonging to the trust. (*Powers v. Ashton* (1975) 45 Cal.App.3d 783, 787-788 [right to assert claims on behalf of trust is vested in trustee].) That entitlement included claims by Virtuoso, as Prappas's anti-SLAPP motion acknowledged that Virtuoso was Williams's closely held corporation and an element of his "estate plan."

Respondents also made an adequate prima facie showing that they were likely to prevail on the three disclosure-related claims. The Business and

18

Professions Code imposes duties of confidentiality regarding tax records on specified tax preparers, which include "[a] person who, for a fee or other consideration, assists with or prepares tax returns for another person" (§ 22251, subd. (a)(1)(A)). Here, respondents' evidence showed that Prappas acted as a tax preparer, so defined, and that Prappas breached his duties of confidentiality by giving Williams's tax records to Armstrong, who passed them to Jung.[13] As Prappas offered no admissible evidence conclusively demonstrating Heebner's lack of standing or the absence of merit of the disclosure-related claims, the probate court correctly denied Prappas's anti-SLAPP motion with respect to the third, seventh, and eighth causes of action.[14]

### 3. *Prappas's Remaining Contentions*

Prappas contends the probate court, in assessing his anti-SLAPP motion, improperly declined to take judicial notice of the case files of the three prior actions and the underlying action. We disagree. The court concluded that Prappas's requests contravened rules 3.110 and 3.113 of the California Rules of

---

[13] We recognize that the Business and Professions Code exempts from the class of tax preparers "an employee who, as part of the regular clerical duties of his or her employment, prepares his or her employer's income, sales, or payroll tax returns" (§ 22251, subd. (a)(2)). However, respondents' showing raises the reasonable inference that Prappas falls outside that exemption. Prappas testified that he managed clients other than Williams, that he acted as Williams's business manager for many years, and that he undertook the role of Williams's tax preparer only when Williams's prior tax preparer retired or was discharged. That testimony is sufficient to show that tax return preparation was not "part of the regular clerical duties of [Prappas's] employment" (§ 22251, subd. (a)(2)).

[14] In view of our conclusions regarding the ten claims alleging violations of a tax preparer's duties, the probate court also correctly denied the anti-SLAPP motion with respect to the claim for unfair business practices (the eleventh cause of action), which relies exclusively on the misconduct identified in those ten claims.

19

Court, which specify the formal requirements for motions and requests for judicial notice. Rule 3.1113(l) of the California Rules of Court states: "Any request for judicial notice must be made in a separate document listing the specific items for which notice is requested and must comply with rule 3.1306(c)." Rule 3.1306(c) of the California Rules of Court requires the party seeking judicial notice to provide copies of the pertinent materials to the court and parties, or arrange for them to be present at the relevant hearing.

We discern no error in the probate court's ruling, as Prappas did not comply with those rules. Prappas's requests were made in his motion and replies, not in separate documents. Moreover, although his brief on appeal asserts that he arranged for the presence of the case files at the hearing on his anti-SLAPP motions, nothing in the record establishes that he did so. The requests were thus properly denied. (See *Conservatorship of Bones* (1987) 189 Cal.App.3d 1010, 1014, fn. 2 [appellate court denied request for judicial notice of entire case file supported only by reference to case number].)

Moreover, even had the denials been erroneous, Prappas has shown no prejudice from them. Prappas contends the case files for which he sought judicial notice showed that respondents' claims arose from protected activity, arguing that the case files demonstrated that the three prior actions involved similar or identical claims, or relied on similar or identical facts. That argument fails for the reasons discussed above (see pt. B.1., *ante*).[15]

Prappas also contends the probate court erroneously (1) overruled his objection to respondents' opposition and (2) sustained respondents' objections to

---

[15]    Prappas also suggests that the materials for which he sought judicial notice conclusively showed that respondents' claims were meritless. However, as he offers no argument (with pertinent record citations) to support that contention, he has forfeited it. (*Paulus*, *supra*, 139 Cal.App.4th at p. 687; *Schoendorf*, *supra*, 97 Cal.App.4th at p. 237.)

his evidentiary showing. He asserts that the opposition and objections were untimely, and the objections themselves were "nothing more than 'averments.'" Those contentions are forfeited for want of supporting argument. (*Paulus*, *supra*, 139 Cal.App.4th at p. 687; *Schoendorf*, *supra*, 97 Cal.App.4th at p. 237.)

Furthermore, we would reject the contentions were we to consider them, as Prappas has shown no reversible error regarding the rulings. Assuming -- without deciding -- that respondents' opposition was untimely, the probate court had the discretion to consider the opposition in the absence of prejudice to Prappas. (See *Kapitanski v. Von's Grocery Co*. (1983) 146 Cal.App.3d 29, 32-33.) The record discloses no such prejudice, as the probate court continued the hearing on the anti-SLAPP motion, and permitted Prappas to file a supplemental reply.

Prappas has also failed to show that the rulings regarding respondents' evidentiary objections constitute reversible error. Some of those rulings excluded portions of declarations from Armstrong containing broad and unspecific objections to respondents' evidentiary showing. Because Evidence Code section 353 requires specificity in objections to evidence, the probate court properly sustained respondents' objections. The remaining rulings excluded portions of Armstrong's declarations contesting respondents' legal contentions, and asserting that respondents had failed to file and serve their opposition to the anti-SLAPP motion in a timely manner. Because Prappas's replies also set forth his challenges to respondents' legal contentions, those rulings were not prejudicial, as they excluded only matters irrelevant to the two-prong test governing anti-SLAPP motions. In sum, the probate court properly denied Prappas's anti-SLAPP motion.

21

D. *Respondents' Request for Award of Attorney Fees Incurred on Appeal*

Respondents request an award of attorney fees on appeal, arguing that Prappas's appeal is frivolous and was intended only to cause further delay of the litigation. Under the anti-SLAPP statute, "[t]he right to attorney fees extends to attorney fees on appeal as well." (*Morrow v. Los Angeles Unified School Dist.* (2007) 149 Cal.App.4th 1424, 1446; accord, *City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1309.) Here, Prappas does not directly contest the determinations underlying the probate court's fee award; to the extent he seeks reversal of that award, his sole contention is that the probate court improperly denied his anti-SLAPP motion. Because Prappas's arguments in support of the motion are materially identical to those presented to the probate court, respondents are entitled to an additional award of the attorney fees they have incurred on appeal. (*City of Alhambra*, *supra*, 193 Cal.App.4th at pp. 1309-1310 [after successfully opposing anti-SLAPP motion and obtaining attorney fee award, plaintiff was entitled to fees incurred on appeal because defendant's sole challenge to fee award was that the motion had been incorrectly denied, and defendant raised no new arguments in support of motion].) The amount of the award is to be determined by the probate court upon motion by respondents. (*Id.* at p. 1310.)

## DISPOSITION

The order denying the anti-SLAPP motion is affirmed.  Respondents are awarded their costs and attorney fees on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:



EPSTEIN, P. J.



COLLINS, J.


23